2005 SD 5

**STATE of South Dakota, Plaintiff and Appellee,**

v.

**Uriah TULLOUS, Defendant and Appellant.**

No. 23084.

Supreme Court of South Dakota.

Argued Nov. 15, 2004.

Decided Jan. 12, 2005.

Lawrence E. Long, Attorney General, Grant Gormley, Assistant Attorney General, Pierre, South Dakota, Attorneys for plaintiff and appellee.

Gregory P. Grajczyk, George B. Boos, Milbank, South Dakota, Attorneys for defendant and appellant.

SABERS, Justice.

[¶ 1.] Uriah Tullous was convicted of possession of a controlled substance (methamphetamine) and possession of two ounces or less of marijuana. He appeals, arguing the trial court erred in 1) refusing to suppress evidence seized under an invalid warrant; 2) refusing to suppress the bodily fluid evidence seized without a warrant; 3) refusing to grant a rehearing of the suppression motion; and 4) refusing to submit the misdemeanor ingestion issue to the jury.

### FACTS

[¶ 2.] On March 10, 2003, law enforcement executed a search warrant at the

home of Brad Hall. The warrant was issued on information from Hall's girlfriend that drug activity was occurring at the home. When officers knocked on the door, Hall answered and allowed the officers in after learning of the search warrant. According to DCI Agent Rechtenbaugh, when Tullous saw police at the door, he ran toward the back of the trailer home. Agent Rechtenbaugh pursued him and testified that he saw Tullous toss something behind a dresser. After Tullous was caught and handcuffed, officers pulled the dresser away from the wall and saw an unused syringe. The search of the home uncovered methamphetamine, paraphernalia for smoking methamphetamine, and marijuana. All of the occupants of the house were arrested and charged with possession. Agent Rechtenbaugh testified that upon arrival at the police station, he informed Tullous that he needed to provide a urine sample. Agent Rechtenbaugh noted that Tullous initially refused, but ultimately provided the sample. At the suppression hearing, Tullous testified that after he refused to provide a sample, the agent dropped the issue until Tullous later went to the restroom. He testified that while he was in the midst of urinating, the agent thrust a specimen cup into his urine stream and thereby forcibly retrieved the sample. Agent Rechtenbaugh testified at trial that he provided Tullous with the specimen cup, and then witnessed him urinating into the cup. Subsequent urinalysis revealed the presence of methamphetamine and marijuana. Tullous was charged by information with unauthorized possession of a controlled substance in violation of SDCL 22–42–5 and possession of less than two ounces of marijuana in violation of SDCL 22–42–6.

[¶ 3.] The evidence against the owner of the home, Hall, was suppressed because the search warrant was deemed insufficient. Tullous brought a motion to suppress the evidence in his case on the same grounds. The trial court (Judge Roehr for Judge Timm, who recused himself on the issue) denied the motion, holding that Tullous lacked "standing" to challenge the search of Hall's home. The trial court's determination was based upon its finding that Tina Hall, Brad Hall's sister, was a more credible witness than Tullous. Tullous requested a rehearing, which was denied and the case was brought to jury trial. Prior to instructing the jury, Tullous requested that the court submit a misdemeanor ingestion instruction as a lesser included offense of the charge of possession. The trial court denied the request. Tullous was convicted on both counts and he appeals, raising four issues:

1. Whether the trial court erred in refusing to suppress evidence seized from the trailer based on a warrant determined to be invalid.

2. Whether the trial court erred in refusing to suppress bodily fluid evidence.

3. Whether the trial court erred in refusing to grant a rehearing of the suppression motion.

4. Whether the trial court erred in refusing to instruct the jury on misdemeanor ingestion as a lesser included offense of possession.

## STANDARD OF REVIEW

[¶ 4.] "A motion to suppress based on an alleged violation of a constitutionally protected right is a question of law reviewed de novo." *State v. Hodges,* 2001 SD 93, ¶ 8, 631 N.W.2d 206, 209 (citing *State v. Stanga,* 2000 SD 129, ¶ 8, 617 N.W.2d 486, 488). "The trial court's findings of fact are reviewed under the clearly erroneous standard of review, but the application of a legal standard to those facts is a question of law, which we review de

novo." *State v. Cummings*, 2004 SD 56, ¶ 6, 679 N.W.2d 484, 486.

**[¶ 5.] WHETHER THE TRIAL COURT ERRED IN REFUSING TO SUPPRESS EVIDENCE SEIZED FROM THE TRAILER BASED ON A WARRANT DETERMINED TO BE INVALID.**

[¶ 6.] The Fourth Amendment to the United States Constitution provides:

The right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures, shall not be violated, and no Warrants shall issue, but upon probable cause, supported by Oath or affirmation, and particularly describing the place to be searched, and the persons or things to be seized.

U.S. Const. Amend. IV; *See also* S.D. Const. Art. VI, § 11. The United States Supreme Court has held that in determining whether a person may challenge a search or seizure, it must be established that the person had an expectation of privacy in the location searched or the item seized that society is willing to accept as reasonable. *Katz v. United States*, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576 (1967). The inquiry centers on reasonableness and the person, rather than property interests. *Id.* It is well established that the protections of the Fourth Amendment are personal rights that accompany citizens regardless of their location. *See e.g. Rakas v. Illinois*, 439 U.S. 128, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978). Therefore, if Tullous establishes that he had a reasonable expectation of privacy that society is willing to accept, he may challenge the search that led to discovery of the evidence used against him at trial.

[¶ 7.] Clearly, the owner or lessee of a home will have a reasonable expectation of privacy in their home that society is willing to accept. The question is less clear with regard to social guests present in that home at a time when a search warrant is executed. The Supreme Court has addressed this question in *Minnesota v. Carter*, 525 U.S. 83, 88, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998) and *Minnesota v. Olson*, 495 U.S. 91, 97–98, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990). Most recently, this Court addressed the issue in *State v. Hess*, 2004 SD 60, 680 N.W.2d 314. Synthesizing these cases, it becomes clear that under the facts of this case, Tullous did have a reasonable expectation of privacy in Hall's home.

[¶ 8.] In *Olson*, the Supreme Court held that law enforcement violated the Fourth Amendment by making a warrantless, non-consensual entry into a house to arrest the defendant, who was an overnight guest. *Olson*, 495 U.S. at 93, 110 S.Ct. 1684. The Court noted:

Since the decision in *Katz v. United States* [ ] it has been the law that "capacity to claim the protection of the Fourth Amendment depends ... upon whether the person who claims the protection of the Amendment has a legitimate expectation of privacy in the invaded place." [ ] A subjective expectation of privacy is legitimate if it is "one that society is prepared to recognize as reasonable."

*Id.* at 95–96, 110 S.Ct. 1684 (internal citations omitted). The Court went on to hold, "[w]e need go no further than to conclude, as we do, that Olson's status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable." *Id.* at 96–97, 110 S.Ct. 1684.

[¶ 9.] In *Carter*, the Court held that defendants in a home for the sole purpose of bagging cocaine did not have a reasonable expectation of privacy in the home.

*Carter*, 525 U.S. at 91, 119 S.Ct. 469. The Court noted that the defendants were present in the home for only a matter of hours and were there for a "business transaction." *Id.* at 90, 119 S.Ct. 469. The Court held:

> If we regard the overnight guest in *Minnesota v. Olson* as typifying those who may claim the protection of the Fourth Amendment in the home of another, and one merely "legitimately on the premises" as typifying those who may not do so, the present case is obviously somewhere in between. But the purely commercial nature of the transaction engaged in here, the relatively short period of time on the premises, and the lack of any previous connection between respondents and the householder, all lead us to conclude that respondents' situation is closer to that of one simply permitted on the premises. We therefore hold that any search which may have occurred did not violate their Fourth Amendment rights.

*Id.* at 91, 119 S.Ct. 469. It was against this backdrop that this Court decided *State v. Hess*, 2004 SD 60, 680 N.W.2d 314. In *Hess*, the Court unanimously held that the defendant had a reasonable expectation of privacy in his girlfriend's home such that he could contest the legality of a police search. In coming to that conclusion, the Court noted:

> According to Professor LaFave, *Olson* amounts to a per se rule that one's "status as an overnight guest is alone enough to show that he had an expectation of privacy in the home that society is prepared to recognize as reasonable.... Yet, *it is fair to say that the Olson decision lends considerable support to the claim that shorter-term guests also have standing.*"

*Id.* ¶ 14 (quoting Wayne R. LaFave, 5 Search & Seizure § 11.3 (3d ed.)) (emphasis added). The majority writing in *Hess* strongly supports the proposition that a social guest has an expectation of privacy in the host's home. The Court stated:

> It is important to note that *Carter* was a plurality opinion in which Justice Kennedy provided the fifth vote necessary for a majority, writing in a special concurrence that, as a general rule, social guests *will* have an expectation of privacy in their host's home. *Id.* at 102, 119 S.Ct. at 469 (Kennedy, J., concurring) (emphasis added). Justice Kennedy noted that the defendants in *Carter* were not social guests but had used the apartment merely as a processing station to prepare drugs for sale. Relying on the specific facts presented in *Carter*, Justice Kennedy concluded that the defendants were an exception to the rule that social guests will have an expectation of privacy. [ ] In summary, *Minnesota v. Carter* stands for the proposition that "parties who are in a residence for only a few hours, on 'business,' and who have little or no previous relationship with the owner or occupants of the premises do not have standing to contest the search of the premises (as opposed to their personal belongings)." Whitebread and Slobogin, *Criminal Procedure, An Analysis of Cases and Concepts* 135 (4th ed. 2000).

*Id.* ¶ 15. The Court went on to note:

> Following *Carter*, several decisions have recognized that social guests who fall somewhere between the overnight guest in *Olson* and a guest simply permitted on the premises have a legitimate expectation of privacy and may mount a Fourth Amendment challenge to searches and seizures. [ ] Although it could be argued that this Court in *Westerfield* previously determined that an occasional guest has no reasonable expectation of privacy in property owned

by another, that 1997 decision predated *Carter.*

*Id.* ¶ 16 (internal citations omitted). Testimony at the suppression hearing indicated that Tullous had ready access to the home, that Hall had shown him where he hid the house key and that Tullous had used the house key to enter the home when Hall was away. Testimony also indicated that Tullous regularly stayed overnight in the house and at times babysat for Hall in the house. The witness that the court relied upon for its determination that Tullous lacked "standing" testified that Tullous watched Hall's children "once in awhile" and conceded that he could have stayed overnight at the residence without her knowing about it. She further testified that Hall and Tullous had been "good friends" for "a long time," that they spent "quite a bit of time together," that they "used to live by each other, ten, eleven years" and that Hall called Tullous by the nickname "Bubba." Even the State's evidence was that Tullous and Brad Hall were good friends who spent a lot of time together at Hall's residence. Under this Court's reasoning in *Hess* and the cases cited therein, Tullous was a regular "social guest" at the Hall home and therefore had a reasonable expectation of privacy in the home that society is willing to honor. The trial court erred in holding that Tullous lacked "standing" to contest the search. Tullous's Fourth Amendment rights were violated by the illegal search of an area in which he had a reasonable expectation of privacy. Therefore, all the evidence obtained by the illegal search is ordered suppressed and the convictions are reversed.

[¶ 10.] In view of our holding on this issue, it is not necessary to reach issues 2, 3, and 4.

[¶ 11.] Reversed.

[¶ 12.] GILBERTSON, Chief Justice, and KONENKAMP, ZINTER, and MEIERHENRY, Justices, concur.