2009 ME 23

**STATE of Maine**

v.

**Robert D. FILION.**

Supreme Judicial Court of Maine.

Argued: Nov. 18, 2008.
Decided: March 10, 2009.

Allan E. Lobozzo, Esq. (orally), Lewiston, ME, for Robert D. Filion.

G. Steven Rowe, Attorney General, William R. Savage, Asst. Atty. Gen. (orally), Augusta, ME, for the State of Maine.

Panel: SAUFLEY, C.J., and CLIFFORD, ALEXANDER, LEVY, SILVER, MEAD, and GORMAN, JJ.

CLIFFORD, J.

[¶ 1] Robert D. Filion appeals from conditional guilty pleas entered in the Superior Court (Kennebec County, *Jabar, J.*) pursuant to M.R.Crim. P. 11(a)(2) on one count of trafficking in schedule W drugs (Class B), 17–A M.R.S. § 1103(1–A)(A) (2008), and one count of violation of conditions of release (Class E), 15 M.R.S. § 1092(1)(A) (2008). Filion contends that the court (*Mills, J.*) erred by finding that he did not have standing to challenge the police search of a friend's apartment where incriminating evidence against Filion was discovered. Filion argues that he had a reasonable expectation of privacy in the apartment because at the time of the search, he was visiting there at the invitation of the person who occupied the apartment, with whom he had a close friendship. We disagree and affirm the judgment.

## I. BACKGROUND

[¶ 2] The undisputed facts are as follows: on April 13, 2007, the Maine Drug Enforcement Agency (MDEA) staged an undercover operation in a strip mall building located on Richmond Road in Litchfield, during which officers used an informant to purchase cocaine from Filion. The officers then executed a search warrant for a business located in the strip mall, where they believed the drug transaction took place. The business was empty, but the officers saw Filion's car parked outside the building. Detective Jonathan Richards went to an apartment, also located in the strip mall building, and asked the tenant to step outside, which she did, followed shortly by Filion, whom the police arrested. The officers conducted a search of the apartment, where they located the marked money the informant had used to purchase the cocaine from Filion.

[¶ 3] Filion was indicted on June 28, 2007, on one count of trafficking in schedule W drugs (Class B), 17–A M.R.S. § 1103(1–A)(A), and one count of violation of conditions of release (Class E), 15 M.R.S. § 1092(1)(A).[1] On July 27, 2007, Filion moved to suppress the evidence seized from the apartment, arguing that the consent given by the tenant to search the apartment was the result of coercion and therefore invalid.[2] At a hearing in October of 2007, the court addressed the issue of whether Filion had standing to challenge the search of the apartment.

[¶ 4] Testifying at the hearing were Detective Richards and the tenant. The court made the following factual findings, which are supported by the record. On April 13, 2007, the tenant lived in the apartment at 490 Richmond Road in Litchfield by herself, and had been living there

---

1. At the time of his arrest, Filion was out on bail for domestic assault. One of his bail conditions was that he not participate in any criminal conduct.

2. In a separate case against the tenant, the Superior Court found that the consent given by the tenant to the police to search the apartment was the result of duress. *See State v. Rines,* KenSC–CR–2007–1028 (Me.Super.Ct.Ken.Cty., Feb. 8, 2008) (*Jabar, J.*).

for about a year. The tenant's grandfather owned the strip mall building where the apartment was located, and the tenant lived there rent-free, paying only for heat. The apartment has a mudroom on the first floor and a living room, kitchen, bathroom, and bedroom on the second floor. The apartment was furnished with the tenant's personal belongings.

[¶ 5] The tenant had known Filion for fourteen or fifteen years. The two are about the same age, and first met when the tenant was about thirteen years old. The two were friends when they attended the same high school and became close friends after.

[¶ 6] During the time she lived in the apartment on Richmond Road, the tenant saw Filion on a regular basis. Between January 1, 2007, and April 13, 2007, she saw Filion several times a week, sometimes alone, sometimes with other people. The tenant and Filion saw each other at her apartment, at his home, and at other places. At times the tenant invited Filion to her apartment, and at other times he invited himself. The tenant considered Filion a guest in her apartment. The two were not romantically involved. Filion did not spend the night at the apartment, but rather "[h]e simply came over and hung out with her for different amounts of time."

[¶ 7] On April 13, 2007, the tenant spoke to Detective Richards of the MDEA and told him that Filion regularly came to her apartment. She told Richards that earlier that day, when Filion asked if he could bring a friend over to her apartment, she agreed. The tenant told Richards that Filion's girlfriend had kicked him out of their house, that he had been staying with friends, and that he had no place to call home at that time, but "reiterated that [Filion] was not staying at her house," and that he was just visiting.

[¶ 8] The court denied Filion's motion to suppress, concluding that he did not have standing to challenge the search of the apartment. Pursuant to M.R.Crim. P. 11(a)(2), Filion entered a conditional guilty plea on the charges of trafficking and violation of a condition of release, preserving his right to appeal the court's order denying his motion to suppress the evidence seized during the search of the apartment. Filion then filed this appeal.

## II.  DISCUSSION

[¶ 9] Filion contends that whether a guest has an expectation of privacy in a third party's home should not be determined by whether the person remains in the house overnight, but instead on the number of contacts the person has with the property. According to Filion, he had numerous contacts with the apartment because of his close and enduring friendship with the tenant, and he contends that these contacts gave him a reasonable expectation of privacy in the apartment.

[¶ 10] Filion does not challenge the court's factual findings, but instead argues that the court misapplied the law. When reviewing an order on a motion to suppress, we review "the ultimate determination of whether the statement should be suppressed" de novo. *State v. Lockhart,* 2003 ME 108, ¶ 15, 830 A.2d 433, 441.

[¶ 11] In order to challenge the admission of evidence through a motion to suppress, the defendant must first establish that he has standing to make that challenge. *State v. Maloney,* 1998 ME 56, ¶ 6, 708 A.2d 277, 279. When the issue is an alleged Fourth Amendment violation, "the defendant must demonstrate that his own reasonable expectation of privacy was violated by the action of the State." *Id.;* *see also Rakas v. Illinois,* 439 U.S. 128, 133–34, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978)

(stating that Fourth Amendment rights are personal rights that "may not be vicariously asserted" (quotation marks omitted)).

[¶ 12] Filion correctly contends that the Supreme Court has "open[ed] the door to argue that not just overnight guests will be afforded Fourth Amendment protection." *See Minnesota v. Carter*, 525 U.S. 83, 90, 91, 119 S.Ct. 469, 142 L.Ed.2d 373 (1998); *see also id.* at 99, 101–02, 119 S.Ct. 469 (Kennedy, J., concurring); *id.* at 103, 119 S.Ct. 469 (Breyer, J., concurring); *id.* at 106–12, 119 S.Ct. 469 (Ginsburg, J., dissenting). Whether a person has a reasonable expectation of privacy in a third person's place falls somewhere on the continuum between the overnight guest in *Minnesota v. Olson*, 495 U.S. 91, 96–97, 110 S.Ct. 1684, 109 L.Ed.2d 85 (1990) (overnight guests have a reasonable expectation of privacy in a third person's property), and the person who was present solely for the purpose of conducting a business transaction in *Carter*, 525 U.S. at 90–91, 119 S.Ct. 469 (a person legitimately on a third party's property solely for the purpose of conducting a business transaction does not have a reasonable expectation of privacy in that property).

[¶ 13] Courts should consider several factors to determine whether a person who was not an overnight guest had a reasonable expectation of privacy in a third person's property, including whether the defendant had possession or ownership of the property, the defendant's prior use of the property, whether the defendant's presence on the property was legitimate, the defendant's ability to control or exclude others from using the property, the defendant's access to the property in the owner's absence, and the defendant's subjective expectation of privacy. *See United States v. Gomez*, 770 F.2d 251, 254 (1st

Cir.1985); *see also United States v. Battle*, 400 F.Supp.2d 355, 358 (D.Mass.2005).

[¶ 14] Filion cites several cases to support his contention that he had sufficient contacts to give him a reasonable expectation of privacy in the tenant's apartment, including, inter alia, *United States v. Rhiger*, 315 F.3d 1283, 1286 (10th Cir.2003); *United States v. Fields*, 113 F.3d 313, 321 (2d Cir.1997); and *South Dakota v. Tullous*, 692 N.W.2d 790, 793–94 (S.D.2005). Filion also cites a South Carolina case in which the court relied on Justice Kennedy's concurrence in *Carter* to hold that the defendant had a reasonable expectation of privacy in his friend's apartment. *See South Carolina v. Missouri*, 361 S.C. 107, 603 S.E.2d 594, 597 & n. 3 (2004); *see also Carter*, 525 U.S. at 99, 119 S.Ct. 469 (Kennedy, J., concurring) (stating that he concurs with the majority opinion because "its reasoning is consistent with [his] view that almost all social guests have a legitimate expectation of privacy, and hence protection against unreasonable searches, in their host's home").

[¶ 15] Relying on these cases, Filion argues that "the quality of the relationship between guest and host is a touchstone for the 'standing' analysis," and that his case is "beyond the mere commercial transaction, or the transient guest, or even the occasional overnight guest." Based on their enduring close relationship, Filion contends that his "interests were sufficiently intertwined" with the tenant's so that the two share "common privacy rights."

[¶ 16] We are not persuaded by Filion's contention that the "touchstone" of the standing analysis is the quality of the relationship between the guest and host. The proper focus is on the person's relationship to the *property* itself, as opposed to the property owner. *See Carter*, 525 U.S. at 88, 119 S.Ct. 469 (stating that "a

defendant must demonstrate that he personally has an expectation of privacy in *the place searched*" (emphasis added)). Thus, we should consider Filion's relationship with the tenant only to the extent that it affects his relationship to her apartment.

[¶ 17] Viewing Filion's relationship to the apartment, Filion has failed to establish that he had a reasonable expectation of privacy in that apartment. *See Gomez,* 770 F.2d at 254; *Battle,* 400 F.Supp.2d at 358. Although Filion was legitimately on the premises at the time, and had used the apartment to visit the tenant at various times throughout the previous year, none of the other factors exists to support a conclusion that he had a reasonable expectation of privacy in the apartment. Filion had never spent the night at the apartment, and he did not intend to spend the night on the day of the search. Filion did not possess or own the apartment; he did not have the ability to control or exclude others from it, illustrated by his requesting the tenant's permission to bring a friend over; and he did not have a key that would allow him to access the apartment in the tenant's absence. Filion presented no evidence that he had a subjective expectation of privacy in the apartment, particularly given that he sought the tenant's permission to visit and to bring another friend along.

[¶ 18] The cases on which Filion relies are distinguishable because, although they support his contention that a person who is not an overnight guest *may* have standing to challenge a search, they emphasize the extensive nature and quality of the defendants' contacts with the property searched rather than with the property owners. For example, although the two defendants in *Fields* were not overnight guests at the time of the search, and one of them used the apartment in part to sell drugs, that defendant had a key to the apartment, had accessed the apartment forty or fifty times in the past on his own, could bring guests to the apartment, could come and go as he pleased, and had paid the apartment owner $125 per week to use the apartment; the other defendant had spent the night at the apartment at least one time in the past. 113 F.3d at 320–21; *see also Rhiger,* 315 F.3d at 1285–86; *Missouri,* 603 S.E.2d at 597 (noting that the defendant had spent several nights at his friend's apartment, kept a change of clothes there, has possessed a key to the apartment at some point in the past, had spent seven hours there on the day of the search, and considered the apartment "a place to get away"). Similarly, the defendant in *Tullous* had "ready access to the home" that was the subject of the search. 692 N.W.2d at 794. There, the owner of the home showed the defendant where he kept a spare key, and the defendant had used the key to access the home on previous occasions. *Id.* The defendant had also regularly stayed at the home overnight, and had cared for the owner's children in the home on occasion. *Id.* Filion, on the other hand, presented no evidence that he had a key or any other type of access to the tenant's apartment; in addition, he never spent the night, and never visited the apartment when the tenant was not present. Filion therefore did not have a reasonable expectation of privacy in that apartment, and the court correctly concluded that he lacked standing to challenge the search.

The entry is:

Judgment affirmed.