MAINE SUPREME JUDICIAL COURT                          Reporter of Decisions
Decision:      2013 ME 21
Docket:        Yor-13-55
Argued:        February 13, 2013
Decided:       February 15, 2013

Panel:         SAUFLEY, C.J., and ALEXANDER, LEVY, SILVER, MEAD, GORMAN, and
               JABAR, JJ.

## STATE OF MAINE

v.

## MARK W. STRONG SR.

LEVY, J.

[¶1]  The State of Maine appeals from an order of the trial court (*Mills, J.*) granting Mark W. Strong's motion to dismiss part of an indictment for failure to adequately charge forty-five counts of violation of privacy (Class D), 17-A M.R.S. § 511(1)(B), (3) (2012), and one count of conspiracy to commit a violation of privacy (Class E), 17-A M.R.S. §§ 151(1)(E), 511(1)(B), (3) (2012).  The State contends that the court erred in granting the M.R. Crim. P. 12(b)(2) motion because it was untimely and the indictment adequately charges offenses pursuant to the applicable statutes.  We affirm the court's order.

## I.  BACKGROUND

[¶2]   On October 3, 2012, Strong was charged by a fifty-nine-count indictment that included twelve counts of promotion of prostitution (Class D),

17-A M.R.S. § 853 (2012); one count of conspiracy to commit promotion of prostitution (Class E), 17-A M.R.S. §§ 151(1)(E), 853; forty-five counts of violation of privacy (Class D), 17-A M.R.S. § 511(1)(B), (3); and one count of conspiracy to commit a violation of privacy (Class E), 17-A M.R.S. §§ 151(1)(E), 511(1)(B), (3). The counts charging a violation of privacy contained nearly identical language and read:

> On or about between [month, date, and year] and [month, date, and year], in Kennebunk, YORK County, Maine, **MARK W STRONG SR,** did intentionally install or use on one or more occasions in a private place, without the consent of the person or persons entitled to privacy therein, a device for observing, photographing, recording, amplifying or broadcasting sounds or events in that place.

Strong pleaded not guilty to all of the charges, and the court ordered that the parties file pretrial motions by December 6, 2012.

[¶3] On January 22, 2013, the first day of jury selection, Strong moved, pursuant to M.R. Crim. P. 12(b), to dismiss the forty-six counts of the indictment involving charges of violation of privacy. Two days later, and while jury selection was still in progress, the court held a hearing on the motion. At the hearing, Strong argued that the crime of violation of privacy, 17-A M.R.S. § 511(1)(B), does not occur if the alleged victim is engaged in criminal activity at the time of the violation of privacy. Specifically, Strong contended that an alleged victim who is, at the time of the alleged violation of privacy, engaging a prostitute in violation of

17-A M.R.S. § 853-B (2012), on premises controlled by the prostitute, is not a "person . . . entitled to privacy" in a "private place" as those terms are used in section 511(1)(B). The State countered that the statute protects the privacy rights of victims, whether or not they are engaged in illegal activity.

[¶4] The court then inquired whether all of the affected counts of the indictment concern the same activity and, specifically, whether there was "any other purpose" for each alleged victim to have been at the alleged prostitute's "place of business." In response, the State made an offer of proof to establish that the key facts underlying the privacy counts demonstrated that the alleged victims were "persons entitled to privacy" in a "private place," as required by section 511(1)(B).

[¶5] In its offer of proof, the State represented that the alleged prostitute with whom Strong cooperated and conspired had engaged in sex for money with the victims in three locations:

> It first starts out at [the alleged prostitute's] residence. And then there is a larger studio, where the windows are covered. And there is a third situation where there is, like, a two-room business suite that [the alleged prostitute] has rented on a second floor, that she has to unlock the door for people to come in and then lock the door when they come in. They arrive. Essentially, the door is locked. . . . [O]n the ground floor, the windows were covered so people couldn't see in. And then when they were on the second floor, the windows weren't covered but people couldn't see in because they were on the second floor.

The State also represented that the victims went to these locations for the sole purpose of engaging a prostitute, and were with the alleged prostitute for "usually anywhere from 30 minutes up to several hours." Further, "some went one or two times; some went many, many, many times."

[¶6] The court granted Strong's motion and dismissed the privacy counts, concluding that based on the indictment and the State's offer of proof, the State could not prove the crimes as alleged. After a recess, the State moved the court to reconsider its dismissal, arguing, for the first time, that Strong's motion was not timely. The court denied the motion to reconsider, and the State filed this interlocutory appeal pursuant to 15 M.R.S. § 2115-A(1) (2012) and M.R. App. P. 21. Strong immediately filed in this Court a motion to dismiss the appeal, which we denied, and to expedite the appeal, which we granted.

## II. DISCUSSION

[¶7] We consider two questions: (A) whether we should reconsider our denial of Strong's motion to dismiss this interlocutory appeal, and (B) whether the court erred in dismissing the privacy counts of the indictment. We address each in turn.

A. Interlocutory Appeal

[¶8] Title 15 M.R.S. § 2115-A(1) permits the State to bring certain pretrial interlocutory appeals on questions of law, including an appeal

from a pretrial dismissal of an indictment, information or complaint; or from any other order of the court prior to trial which, either under the particular circumstances of the case or generally for the type of order in question, has a reasonable likelihood of causing either serious impairment to or termination of the prosecution.

When determining whether to exercise this jurisdiction, we "consider whether under all the circumstances the lower court's ruling has produced a significant setback to the State's attempt to bring the accused to justice." *State v. Drown*, 447 A.2d 466, 470-71 (Me. 1982); *see also State v. Brackett*, 2000 ME 54, ¶¶ 6-7, 754 A.2d 337.

[¶9]  Here, the circumstances of the court's dismissal of the forty-six privacy counts present a reasonable likelihood that the State's prosecution of Strong has been seriously impaired.  The dismissed privacy counts constitute the majority of the criminal counts brought against Strong.  They allege criminal activity that is wholly separate from and not customarily associated with the remaining counts alleging crimes of promotion of prostitution.  *See* 17-A M.R.S. §§ 151(1)(E), 853. Further, the legal basis for the dismissal presents a question of great public importance because it involves a criminal statute forbidding, among other things, video surveillance—a phenomenon that is lawful in many situations and increasingly common in modern society.  Under these circumstances, the exercise of our authority to consider this interlocutory appeal pursuant to 15 M.R.S.

6

§ 2115-A(1) is warranted and we decline to reconsider our earlier denial of Strong's motion to dismiss the State's appeal. *See Drown*, 447 A.2d at 470-71.

B.     Dismissal of the Counts Charging Violation of Privacy

[¶10]   The State contends that the court erred in dismissing the privacy counts because (1) Strong's motion was untimely, and (2) the indictment adequately charges a crime pursuant to 17-A M.R.S. § 511(1)(B).

1.     Timeliness

[¶11]   The State failed to raise its timeliness objection until after the court had heard and granted the motion to dismiss, and thus it has failed to preserve the issue for appellate review. *See State v. Dolloff*, 2012 ME 130, ¶ 39 n.11, --- A.3d --- (stating that "an objection must be made within a reasonable time of the offending [action] to be preserved"); *see also* M.R. Crim. P. 12(b)(2).

2.     Adequacy of the Indictment

[¶12]   "[A]n indictment is subject to dismissal for failure to state an offense only when the facts alleged on its face fail to make out an offense against the State," which strips the court of jurisdiction to try the accused. *State v. Storer*, 583 A.2d 1016, 1020-21 (Me. 1990).   Although the State has not objected to it here, we have consistently rejected the practice of considering facts not alleged on the face of an indictment in determining whether the indictment charges an offense. *See, e.g.*, *id.* at 1021; *see also* 1 Cluchey & Seitzinger, *Maine Criminal*

*Practice* § 12.1 at IV-57 (Gardner ed. 1995). Some courts, however, have recognized a narrow exception to this rule in the "unusual circumstance" in which the motion presents a question of law, the material facts are not in dispute, and the prosecution does not object to the court's consideration of those facts. *United States v. Yakou*, 428 F.3d 241, 247 (D.C. Cir. 2005) (quotation marks omitted); *see also United States v. Flores*, 404 F.3d 320, 324-25 (5th Cir. 2005).

[¶13] This case presents just such an "unusual circumstance." The challenge raised is a question of law, the proffered facts are not in dispute, and, most important, the State did not oppose the court's consideration of those facts. Moreover, the basis for the court's inquiry into the underlying facts is evident: the indictment provided no specific information regarding the alleged crimes. It omitted the names of the alleged victims; offered no description of the places at which the alleged violations of privacy took place; and did not allege that those places were, as the statute requires, places in which a person "may reasonably expect to be safe from surveillance, including, but not limited to, changing or dressing rooms, bathrooms and similar places." 17-A M.R.S. § 511(2) (2012); *see also* 17-A M.R.S. § 32 (2012) (providing that the elements of a crime include all "attendant circumstances"); *Drown*, 447 A.2d at 470 (observing that the indictment should "be sufficiently specific that it enables [a] defendant to prepare his defense and protects him against further jeopardy for the same offense"). Although we

reemphasize the rule that courts should not look beyond the four corners of an indictment to determine whether it charges a crime, based on the highly unusual circumstances presented here, the trial court acted well within the bounds of its discretion in evaluating the adequacy of the indictment as augmented by the State's offer of proof. *See Yakou*, 428 F.3d at 247.

[¶14] We next turn to the plain language of the statute. *See State v. Paradis*, 2010 ME 141, ¶ 5, 10 A.3d 695 (per curiam). Our review of the proper construction of the statute is de novo. *See State v. Jones*, 2012 ME 88, ¶ 6, 46 A.3d 1125. Section 511(1)(B) provides,

> A person is guilty of violation of privacy if . . . that person intentionally . . . [i]nstalls or uses in a private place without the consent of the person or persons entitled to privacy in that place, any device for observing, photographing, recording, amplifying or broadcasting sounds or events in that place.

17-A M.R.S. § 511(1)(B). Section 511 specifically defines a "private place" as "a place where one may reasonably expect to be safe from surveillance, including, but not limited to, changing or dressing rooms, bathrooms and similar places." *Id.* § 511(2).

[¶15] The State contends that section 511(1)(B) extends to any place in which a person disrobes in private, regardless of whether that person is engaging in

criminal conduct at the time.[1]  In contrast, Strong contends that persons engaged in criminal activity have no reasonable expectation to be safe from surveillance, and therefore that section 511(1)(B) does not encompass persons who are engaging a prostitute in violation of 17-A M.R.S. § 853-B.  Because the statute is reasonably susceptible to more than one construction, it is ambiguous and we turn to its legislative history for guidance.[2]  *See Carrier v. Sec'y of State*, 2012 ME 142, ¶ 12, --- A.3d ---; *Paradis*, 2010 ME 141, ¶ 5, 10 A.3d 695.

[¶16]  When first enacted in 1976, section 511 defined a "private place" to mean "a place where one may reasonably expect to be safe from surveillance but does not include a place to which the public or a substantial group has access."  P.L. 1975, ch. 499, § 1.  The comment immediately following the text of the bill as enacted states that the provision was intended "to prevent [the] seeing or hearing of

---

[1]  Although the State urges us to construe 17-A M.R.S. § 511(1)(B) (2012) in light of the Fourth Amendment jurisprudence addressing unreasonable searches and seizures, that body of law provides little guidance.  Nowhere in section 511 is there any indication that the Legislature intended to make the rights protected by the statute coextensive with the rights protected by the Fourth Amendment.  In addition, there is no logical correlation between the Fourth Amendment and the circumstances addressed by section 511, when, for example, many persons who could expect to be safe from surveillance within the meaning of the statute might nonetheless lack standing to assert Fourth Amendment rights.  *See State v. Filion*, 2009 ME 23, ¶ 13, 966 A.2d 405 (observing that a defendant who asserts a violation of the Fourth Amendment occurring at a location belonging to or controlled by a third person must demonstrate that he or she had a reasonable expectation of privacy based on several factors, including the defendant's possession, ownership, or prior use of the property; the legitimacy of the defendant's presence on the property; the defendant's ability to exclude others from the property; the defendant's access to the property if owned by another who is not present; and the defendant's subjective expectation of privacy).

[2]  Section 511(1)(B)'s description of the conduct it prohibits is less specific than are similar statutes in other jurisdictions.  *See, e.g.*, 720 Ill. Comp. Stat. Ann. 5/26-4 (LEXIS through Pub. Act 97-1163 except Pub. Act 97-1150 of the 2012 Legis. Sess.); N.H. Rev. Stat. Ann. § 644:9 (LEXIS through Ch. 290 of 2012 Legis. Sess.); N.Y. Penal Law §§ 250.40, 250.45 (LEXIS through 2012 released chapters 1-505).

things that *are justifiably expected* to be kept private." 17-A M.R.S.A. § 511 cmt. (2006) (emphasis added). Through amendments in 1999 and 2008, the Legislature revised the definition of "private place" by removing the language excluding "a place to which the public or a substantial group has access" and adding the language, "including, but not limited to, changing or dressing rooms, bathrooms and similar places." *See* P.L. 2007, ch. 688, § 2; P.L. 1999, ch. 116, § 1.

[¶17] Thus, the Legislature's overall purpose in criminalizing certain violations of privacy cannot be understood as an effort to broadly protect individuals' subjective expectations of privacy. The purpose is more focused, requiring that certain objective factors be present as well. The place involved must be "a place where one may *reasonably* expect to be safe from surveillance." 17-A M.R.S. § 511(2) (emphasis added). Further, a person's desire to keep private what transpires within that place must be a *justifiable expectation*, and, therefore, objectively reasonable. *See* 17-A M.R.S.A. § 511 cmt. (2006).

[¶18] Applying these standards to the unique facts delimited by the counts of the indictment as augmented by the State's offer of proof, the persons who entered and disrobed in the places described in the offer of proof—a residence, studio, and business office where a prostitute conducted her business—may have

held a subjective expectation of privacy.[3]  Nevertheless, they cannot qualify as "persons entitled to privacy" in those places for purposes of the objective requirements of section 511(1)(B) because, as established by the State's offer of proof, their sole purpose for being present in those places was to engage a prostitute.  Places of prostitution and people who knowingly frequent them to engage a prostitute are not sanctioned by society.  Accordingly, it is objectively unreasonable for a person who knowingly enters a place of prostitution for the purpose of engaging a prostitute to expect that society recognizes a right to be safe from surveillance while inside.[4]

[¶19]  Because the relevant counts of the indictment, as augmented by the State's offer of proof, failed to adequately charge the offense of violation of privacy, the court properly granted Strong's motion to dismiss.

The entry is:

> Judgment dismissing counts 3, 5, 6, 7, 9, 10, 11, 12, 13, 15, 16, 17, 18, 20, 21, 22, 23, 25, 26, 27, 28, 29, 31, 32, 33, 34, 36, 37, 38, 39, 40, 42, 43, 44, 45, 47, 48, 49, 50, 52, 53, 54, 55, 57, 58, and

---

[3]  The State's offer of proof did not address whether any of the unidentified persons who are the alleged victims of the privacy counts knew or had reason to know that they might be subject to surveillance while with the prostitute.  We have assumed for purposes of our analysis that none did.

[4]  Having reached this conclusion, we need go no further.  We therefore do not decide whether, as Strong contends, a violation of section 511(1)(B) can never be committed if a person otherwise entitled to privacy is engaged in criminal activity at the time of the privacy violation.  Nor do we address the parameters of the right to privacy outside the bounds of section 511(1)(B) and the unique circumstances of this case.

59 is affirmed. Case remanded for further proceedings consistent with this opinion.

_____

**On the briefs:**

Kathryn L. Slattery, District Attorney, Justina A. McGettigan, Dep. Dist. Atty., and Patrick H. Gordon, Asst. Dist. Atty., for appellant State of Maine.

Daniel G. Lilley, Esq., and Tina Heather Nadeau, Esq., Daniel G. Lilley Law Offices, P.A., Portland, for appellee Mark W. Strong Sr.

Sarah A. Churchill, Esq., Nichols & Webb, P.A., Saco, for amicus curiae Alexis Wright.

**At oral argument:**

Patrick H. Gordon, Asst. Dist. Atty., for appellant State of Maine.

Daniel G. Lilley, Esq., for appellee Mark W. Strong Sr.

York County Superior Court docket number CR-2012-2049
FOR CLERK REFERENCE ONLY