Filed 7/12/17 (unmodified opinion attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SANTA ANA POLICE OFFICERS ASSOCIATION et al., Plaintiffs and Appellants, v. CITY OF SANTA ANA et al., Defendants and Respondents. | G053126 (Super. Ct. No. 30-2015-00801604) ORDER MODIFYING OPINION; NO CHANGE IN JUDGMENT |

It is ordered that the opinion filed herein on June 13, 2017 be modified as follows:

On the first line of the first full paragraph of page 2, after "(Doe Officer 1 and Doe Officer 2)" add footnote 1 to read as follows:

> [1] Doe Officer 1 and Doe Officer 2 are named in the complaint as plaintiffs under their fictitious names only. The officers' names are not revealed anywhere in the appellate record. The record on appeal is limited because the appeal arises from a judgment entered after a demurrer was sustained without leave to amend. Thus, we do not need to reach the question whether to reveal their names.

Former footnote 1 at the end of the second sentence of the third paragraph of page 2 is renumbered as footnote 2. Former footnote 2 at the end of the first full paragraph of page 7 is renumbered as footnote 3.

These modifications do not effect a change in the judgment.


FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.

Filed 6/13/17; pub. order 7/6/17 (see end of opn.) (unmodified opinion)

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SANTA ANA POLICE OFFICERS ASSOCIATION et al., <br><br>    Plaintiffs and Appellants, <br><br>      v. <br><br> CITY OF SANTA ANA et al., <br><br>    Defendants and Respondents. | G053126 <br><br> (Super. Ct. No. 30-2015-00801604) <br><br> O P I N I O N |

Appeal from a judgment of the Superior Court of Orange County, Ronald L. Bauer, Judge. Affirmed in part, reversed in part, and remanded.

Corey W. Glave for Plaintiffs and Appellants.

Ferguson, Praet & Sherman, G. Craig Smith and Anthony M. Snodgrass for Defendants and Respondents.

\*       \*       \*

Two City of Santa Ana Police officers (Doe Officer 1 and Doe Officer 2) were the subjects of an internal affairs investigation based on their conduct during the execution of a search warrant at a marijuana dispensary. The Santa Ana Police Department initiated the investigation after video recordings of the officers were released to the media. The video recordings were made by the dispensary owners without the knowledge of the officers, who had removed all known recording devices before executing the warrant.

Plaintiffs Santa Ana Police Officers Association (SAPOA), Doe Officer 1, and Doe Officer 2 (collectively referred to as Plaintiffs) brought this lawsuit against the City of Santa Ana, the Santa Ana Police Department, and the Santa Ana Chief of Police (collectively referred to as Defendants) and asserted two causes of action arising out of the investigation. In the first cause of action, Plaintiffs alleged that Defendants violated the California Invasion of Privacy Act, Penal Code section 630 et seq., by using the video recordings made at the marijuana dispensary as the basis for, and as evidence in, the internal affairs investigation. In the second cause of action, Plaintiffs alleged that Defendants violated Government Code section 3303, subdivision (g) (section 3303(g)), part of the Public Safety Officers Bill of Rights Act, Government Code section 3300 et seq., by refusing to produce tape recordings of the initial interrogations of the officers, transcribed stenographer notes, and any reports or complaints made by the investigators or other persons, before interrogating the officers a second time.

The trial court sustained, without leave to amend, Defendants demurrer to the first amended complaint (the Complaint). Plaintiffs appealed that decision.[1] We

---

[1] Plaintiffs appealed when no judgment had yet been entered. We ordered Plaintiffs to file a judgment or signed order of dismissal. Plaintiffs obtained a judgment from the trial court. The judgment was filed in the trial court on March 8, 2016 and submitted to this court on March 16.

affirm the judgment as to the first cause of action and reverse as to the second cause of action.

We conclude the Complaint does not, and cannot, state a violation of the California Invasion of Privacy Act because Doe Officer 1 and Doe Officer 2 had no reasonable expectation as a matter of law that their communications during the raid of the marijuana dispensary were not being overheard, watched, or recorded. We also conclude, however, the second cause of action states a cause of action for violation of the Public Safety Officers Bill of Rights Act because, under section 3303(g), Defendants were required to produce the tape recordings of the initial interrogations, transcribed stenographer notes, and reports and complaints made by the investigators or other persons, before Doe Officer 1 and Doe Officer 2 were interrogated a second time.

## ALLEGATIONS

The Complaint alleged the following facts.

The SAPOA is the recognized employee organization for nonmanagement Santa Ana Police Department employees and represents its members in their employment relations with the Santa Ana Police Department and the City of Santa Ana. Doe Officer 1 and Doe Officer 2 are full-time police officers in the Santa Ana Police Department and are members of SAPOA.

In May 26, 2015, Doe Officer 1 and Doe Officer 2 participated in the execution of a narcotics search warrant on a location in the City of Santa Ana commonly referred to as the "Sky High Medical Dispensary" (the Dispensary). A number of undercover officers, wearing masks to hide their identities, participated in the search. Doe Officer 1 and Doe Officer 2 were asked to work overtime or an extra assignment after their regular shift in order to assist the "Medical [M]arijuana Dispensary [T]ask [F]orce."

The Dispensary had a set of outer doors through which the public would enter into a hallway area leading to another door on the south wall of the first interior

3

room.  This second room appeared to be a lobby of sorts.  On the west wall of this room was a window similar to a drive-through window at a fast food restaurant.  A person sat at this window and maintained the flow of traffic into the "showroom" in which marijuana was dispensed.  The north wall had windows that were blacked out from floor to ceiling so that nobody from the outside could see in.

The police officers entered the Dispensary, escorted all civilians present out of the business, and detained them.  Once all civilians from inside the Dispensary had been accounted for and escorted out, police officers conducted a final sweep through the business to make sure no other civilians were inside.  The Complaint alleged:  "All of the rooms were checked and re-checked.  Only after it had been determined no one, aside from police officers were inside of the business did the collection of evidence begin.  The only people to remain inside the Dispensary were Police Department employees, until Fire Authority personnel arrived to open locked safes."

The Complaint alleged:  "After all civilians were escorted/detained outside, Doe Officer 1, as instructed by his superior officers, disabled all known recording devices (video cameras and DVR).  It was reasonably believed that all surveillance systems had been rendered inoperable at that time.  At this time, all police personnel present had a reasonable expectation that their conversations were no longer being recorded."  [¶]  . . . Only after all known cameras and recording devices were removed and the hard drive had been collected by detectives did the undercover detectives feel the crime scene was safe; all detectives kept their facial coverings on during this entire operation until the camera systems had been removed.  [¶]  . . .  Once the camera systems had been made in[]operative, many of the officers, [including] the Doe officers, let down their guard and began communicating with one another as they would in a non-public setting outside the purview [of] the public.  While completing mundane tasks such as recording recovered evidence, the officer[s] engaged in conversations amongst each other that were not meant to be heard by any members of the [D]ispensary or the public."

4

Because the police officers were in a private place, they joked and spoke about things they would not say in public, such as confidential work-related matters and personal family issues. Doe Officer 2 spoke to her son by cell phone. She would have left the area if she had known that she was being video and audio recorded. The officers talked about their family members. If the officers had known their conversations were being recorded, they would not have revealed the names of family members out of fear for their safety.

The officers remained calm and professional while dealing with the public, but at times joked and made light of the situation in order to relieve stress. The officers conversed only when they believed their conversations could not be overheard and were not being recorded. The officers did not reasonably expect their conversations to be overheard or recorded.

The Complaint alleged that, unbeknownst to the officers, the Dispensary owners had placed hidden cameras in the Dispensary in anticipation that it would be raided. The Dispensary owners had neither obtained nor received the consent of the police officers to have their communications recorded. The hidden cameras secretly recorded the communications of the police officers, including Doe Officer 1 and Doe Office 2. The Dispensary owner later released edited portions of the recordings to media outlets "in a manner to distort the officers['] actions and cause problems for both the involved officers and the City's enforcement actions."

The Complaint alleged that "[a]fter the illegal recordings were released to the media, Defendants . . . viewed the videos and, based solely on the content of the edited illegal recordings, initiated internal affairs investigations of each of the officers involved in the warrant service, including internal investigations of Doe Officer 1 and Doe Officer 2." Doe Officer 1 was interrogated on June 21, 2015. Before the interrogation, Doe Officer 1 watched selected portions of "the illegal recordings." Doe Officer 1's attorney objected to the investigation on the ground it was "based solely on

5

the illegal recordings."  Defendants "summarily dismissed the objection and ordered Doe Officer 1 to continue with the interrogation or be subjected to discipline for insubordination."

Doe Officer 2 was interrogated on June 18, 2015.  Before the interrogation, Doe Officer 2 watched selected portions of "the illegal recordings," and her attorney objected to the investigation on the ground it was "based solely on the illegal recordings." Defendants "summarily dismissed the objection and ordered Doe Officer 2 to continue with the interrogation or be subjected to discipline for insubordination."

Later, Defendants obtained more footage from the recordings made at the Dispensary during execution of the warrant and, based on the additional footage, notified Doe Officer 1 and Doe Officer 2 of additional interrogations.  Both Doe Officer 1 and Doe Officer 2 reasserted their objections to the investigation on the ground "it was based on evidence obtained as the result of an unlawful recording of the officers."  Counsel for Doe Officer 1 and Doe Officer 2 requested that Defendants provide materials pursuant to section 3303(g).

According to the Complaint, Doe Officer 1 and Doe Officer 2 were ordered to appear for further investigation and their objections were ignored.  Defendants did not produce the requested materials.  Both Doe Officer 1 and Doe Officer 2 were interrogated again on July 17, 2015.  Before the interrogations and during breaks between interviews, representatives of Defendants confirmed that the interviews were based on "newly acquired recordings from the service of the search warrant."

In the Complaint, Plaintiffs sought injunctive relief based on two causes of action.  The first cause of action is for violation of California Invasion of Privacy Act, Penal Code section 632 et seq.  The second cause of action is for violation of the Public Safety Officers Bill of Rights Act, Government Code section 3300 et seq.  Plaintiffs sought injunctive relief to restrain Defendants from "releasing information obtained from the illegal recordings or the fruits of said recordings in any [internal affairs] proceeding."

6

The trial court sustained, without leave to amend, Defendants' demurrer to the Complaint.

## STANDARD OF REVIEW

We independently review the ruling on a demurrer and determine de novo whether the pleading alleges facts sufficient to state a cause of action. (*McCall v. PacifiCare of Cal., Inc.* (2001) 25 Cal.4th 412, 415.) We assume the truth of the properly pleaded factual allegations, facts that reasonably can be inferred from those expressly pleaded, and matters of which judicial notice can and has been taken. (*Schifando v. City of Los Angeles* (2003) 31 Cal.4th 1074, 1081.) We construe the pleading in a reasonable manner and read the allegations in context. (*Ibid*.) "We affirm the judgment if it is correct on any ground stated in the demurrer, regardless of the trial court's stated reasons. [Citation.]" (*Las Lomas Land Co., LLC v. City of Los Angeles* (2009) 177 Cal.App.4th 837, 848.)[2]

## DISCUSSION

### I.

### Plaintiffs Cannot State a Cause of Action Under the California Invasion of Privacy Act Claim.

Plaintiffs alleged the Defendants violated the California Invasion of Privacy Act "by knowingly using evidence obtained as a result of an illegal eavesdropping against the officers involved in the service of the search warrant." Plaintiffs sought an injunction against use of their recorded conversations on the ground the recordings were made in violation of Penal Code section 632.

---

[2] Plaintiffs argue the trial court used wrong standard by stating in the minute order sustaining the demurrer "the court believes that the present complaint gives the plaintiffs no likelihood of success." The court also recognized that the balancing test used when considering the issuance of a preliminary injunction is not the same test used when ruling on a demurrer. Because we apply a de novo standard of review, and do not review the trial court's stated reasons, it would not matter if the trial court used the wrong test.

7

The California Invasion of Privacy Act, Penal Code section 630 et seq., was enacted in 1967 for the purpose of protecting the right of privacy by, among other things, "requiring that all persons consent to a recording of their conversation." (*Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 768-769 (*Flanagan*).) Subdivision (a) of Penal Code section 632 states in relevant part: "A person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication, whether the communication is carried on among the parties in the presence of one another or by means of a telegraph, telephone, or other device, except a radio, shall be punished by a fine. . . or imprisonment. . . ." Penal Code section 637.2 creates a private civil action for violation of the California Invasion of Privacy Act.

Subdivision (d) of Penal Code section 632 states: "Except as proof in an action or prosecution for violation of this section, evidence obtained as a result of eavesdropping upon or recording a confidential communication in violation of this section is not admissible in any judicial, administrative, legislative, or other proceeding."

Penal Code section 632, subdivision (c) defines "'confidential communication'" as "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded." In *Flanagan,* the California Supreme Court endorsed the following test for determining confidentiality of a communication: "'[U]nder section 632 "confidentiality" appears to require nothing more than the existence of a reasonable expectation by one of the parties that no one is "listening in" or overhearing the conversation.'" (*Flanagan, supra,* 27 Cal.4th at pp. 772-773.) Thus, the court concluded, "a conversation is confidential under section 632 if a party to that

8

conversation has an objectively reasonable expectation that the conversation is not being overheard or recorded." (*Flanagan, supra,* 27 Cal.4th at pp. 776-777.)

Whether a party had an objectively reasonable expectation that the conversation was not being overheard or recorded is generally a question of fact. (*Hataishi v. First American Home Buyers Protection Corp.* (2014) 223 Cal.App.4th 1454, 1466.) Defendants had the burden of establishing, based on the facts alleged, that Doe Officer 1 and Doe Officer 2 as a matter of law had no objectively reasonable expectation that their communications during the execution of the warrant were not being overheard or recorded. (*Kight v. CashCall, Inc.* (2011) 200 Cal.App.4th 1377, 1397.) "Whether plaintiff has a reasonable expectation of privacy in the circumstances and whether defendant's conduct constitutes a serious invasion of privacy are mixed questions of law and fact. If the undisputed material facts show no reasonable expectation of privacy or an insubstantial impact on privacy interests, the question of invasion may be adjudicated as a matter of law." (*Hill v. National Collegiate Athletic Assn.* (1994) 7 Cal.4th 1, 40 [claim for invasion of privacy in violation of state constitution].)

Defendants assert that Plaintiffs did not, and cannot as a matter of law, allege facts establishing Doe Officer 1 and Doe Officer 2 had an objectively reasonable expectation that their conversations during execution of the search warrant were not being overheard or recorded. Defendants argue, "[o]bjectively, a reasonable officer would expect that [his or her] conversations and conduct may be recorded by hidden cameras of an owner of a location where they are engaged in the on-duty execution of a search warrant." We agree with Defendants. Under the facts alleged, the Doe Officers as a matter of law had no reasonable expectation of privacy when executing the search warrant at the Dispensary.

The Complaint alleged the officers let their guard down once they had removed all *known* cameras and recording devices. It was, however, objectively

9

unreasonable as a matter of law to believe there were no *unknown* cameras and recording devices in the Dispensary. The officers were carrying out a raid of a marijuana dispensary—a drug operation—and a secretive one at that. The Complaint alleged the windows were blacked out so that nobody could see into the business. Customers entered through a set of doors into antechamber before going through another set of doors into the "showroom" where product was sold. In this situation, under the facts alleged, when police officers are executing a search warrant on a drug operation, the officers could not have a reasonable expectation that "the conversation is not being overheard or recorded." (*Flanagan, supra,* 27 Cal.4th at pp. 776-777.) Plaintiffs do not challenge the trial court's order denying leave to amend, do not ask on appeal for leave to amend, and do not offer any set of proposed allegations under which the Doe Officers might have had a reasonable expectation of privacy.

## II.

### Plaintiffs Stated a Cause of Action Under the Public Safety Officers Bill of Rights Act.

Plaintiffs alleged in the second cause of action that Defendants violated the Doe officers' rights under the Public Safety Officers Bill of Rights Act, Government Code section 3300 et seq., by refusing to produce materials under section 3303(g). Plaintiffs alleged that Doe Officer 2 was interrogated on June 18, 2015 and Doe Officer 1 was interrogated on June 21, 2015. After these initial interrogations, Doe Officer 1 and Doe Officer 2 were notified they were going to be interrogated again at a later date. Counsel for Doe Officer 1 and Doe Officer 2 requested that Defendants produce the materials identified in section 3303(g). Defendants denied the request, and Doe Officer 1 and Doe Officer 2 appeared for the second round of interrogations on July 17, 2015.

"The purpose of the [Public Safety Officers Bill of Rights] Act is 'to maintain stable employer-employee relations and thereby assure effective law enforcement.' [Citation.] The Act requires that law enforcement agencies throughout the

10

state afford minimum procedural rights to their peace officer employees. [Citations.] Thus the Act secures for peace officers—when off duty and not in uniform—the right to engage, or to refrain from engaging, in political activity ([Gov. Code,] § 3302); it protects against punitive action or denial of promotion for the exercise of procedural rights granted under its own terms or under an existing grievance procedure ([Gov. Code,] § 3304, subd. (a)); it provides that no adverse comment be entered in an officer's personnel file until after the officer has been given an opportunity to read and sign the comment ([Gov. Code,] § 3305); it mandates that when an adverse comment is entered in a personnel file, the officer shall have 30 days to file a written response to be attached to the adverse comment in the file ([Gov. Code,] § 3306); and it protects against compelled disclosure, except in limited circumstances, of an officer's financial status ([Gov. Code,] § 3308)." (*Pasadena Police Officers Assn. v. City of Pasadena* (1990) 51 Cal.3d 564, 572 (*City of Pasadena*).)

Government Code section 3303 governs the investigation and interrogation of public safely officers. At issue here is section 3303(g), which reads: "The complete interrogation of a public safety officer may be recorded. *If a tape recording is made of the interrogation, the public safety officer shall have access to the tape if any further proceedings are contemplated or prior to any further interrogation at a subsequent time. The public safety officer shall be entitled to a transcribed copy of any notes made by a stenographer or to any reports or complaints made by investigators or other persons, except those which are deemed by the investigating agency to be confidential.* No notes or reports that are deemed to be confidential may be entered in the officer's personnel file. The public safety officer being interrogated shall have the right to bring his or her own recording device and record any and all aspects of the interrogation." (Italics added.)

Plaintiffs argue the italicized portion of section 3303(g) means the Defendants were required, before the second round of interrogations, to produce the tape

11

of the first round of interrogations and "any reports or complaints made by investigators or other persons." (§ 3303(g).) Defendants argue they were not required to produce those materials until after the second round of interrogations and charges were filed against the Doe officers.

As to any recordings of the first round of interrogations, section 3303(g) plainly states "the public safety officer shall have access to the tape . . . prior to any further interrogation at a subsequent time." Plaintiffs alleged that counsel for the Doe officers requested the recordings and that Defendants did not produce them before the second round of violations. Those allegations state a cause of action for violation of section 3303(g).

In *City of Pasadena*, *supra*, 51 Cal.3d 564, the California Supreme Court addressed the issue of when "a transcribed copy of any notes made by a stenographer" and "any reports or complaints made by investigators or other persons" must be produced. (*Id.* at p. 575, italics omitted.) The court noted that former subdivision (f) of section 3302 (now section 3303(g)) "does not specify when an officer's entitlement to the reports and complaints arises." (*City of Pasadena, supra,* 51 Cal.3d at p. 575.) The court sought to harmonize subdivision (f) as a whole. Because recordings and notes must be produced after an interrogation, then, the court reasoned, reports and complaints also must be produced after an interrogation. (*Id.* at p. 576.) The court also noted that "the Legislature placed the provision regarding disclosure of reports and complaints and the provision specifying entitlement to transcribed notes *in the same sentence* in subdivision (f) [now subdivision (g)]" and "[t]his placement is an additional indication that the Legislature must have intended the discovery rights in each instance to be coextensive, entitling the officer to copies of reports and complaints and transcribed stenographer's notes after the interrogation." (*Ibid.*)

Because discovery rights to reports and complaints are coextensive with discovery rights to tape recordings of interrogations, and tapes recordings must be

12

produced "prior to any further interrogation," then it follows that reports and complaints also must be produced "prior to any further interrogation."  By alleging that Defendants did not produce "all required documents" under section 3303(g) before the second round of interrogations, the Complaint stated a claim for violation of the Public Safety Officers Bill of Rights Act.

## DISPOSITION

The judgment is affirmed as to the first cause of action and in all other respects is reversed.  Because each party prevailed in part, no party shall recover costs.

FYBEL, J.

WE CONCUR:

O'LEARY, P. J.

THOMPSON, J.

Filed 7/6/17

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| SANTA ANA POLICE OFFICERS ASSOCIATION et al.,<br><br>    Plaintiffs and Appellants,<br><br>        v.<br><br>CITY OF SANTA ANA et al.,<br><br>    Defendants and Respondents. | G053126<br><br>(Super. Ct. No. 30-2015-00801604)<br><br>O R D E R |

On the court's own motion, the above-entitled opinion, filed on June 13, 2017, is certified for publication in the Official Reports.  The opinion meets the standards for publication set forth in California Rules of Court, rule 8.1105(c)(2), (3), (4) and (6). Appellants' request for partial publication, filed on June 27, 2017, and Respondents' request for partial publication, filed on June 29, 2017, are DENIED as moot.


                                        FYBEL, J.

WE CONCUR:


O'LEARY, P. J.


THOMPSON, J.