Filed 2/24/21

CERTIFIED FOR PARTIAL PUBLICATION*

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

THIRD APPELLATE DISTRICT

(Sacramento)

----

| | |
|---|---|
| THE PEOPLE, | C087289 |
| Plaintiff and Respondent, | (Super. Ct. No. 15F01682) |
| v. | |
| MICHAEL J. LYON, | |
| Defendant and Appellant. | |

APPEAL from a judgment of the Superior Court of Sacramento County, Robert M. Twiss, Judge. Affirmed.

Law Offices of Eric S. Multhaup and  Eric S. Multhaup; Jenny M. Brandt Retained Counsel for Defendant and Appellant.

---

* Pursuant to California Rules of Court, rules 8.1105 and 8.1110, this opinion is certified for publication with the exception of part IV.

Xavier Becerra, Attorney General, Lance E. Winters, Chief Assistant Attorney General, Michael P. Farrell, Senior Assistant Attorney General, Darren K. Indermill, Supervising Deputy Attorney General, John W. Powell, Deputy Attorney General for Plaintiff and Respondent.

This is an invasion of privacy case involving the clandestine videotaping of prostitutes at a private residence. A jury found defendant Michael J. Lyon guilty of six counts of eavesdropping on or recording confidential communications (Pen. Code, § 632, subd. (a))[1] and two counts of disorderly conduct (§ 647, subd. (j)(3)(A)).

Defendant argues on appeal that prostitutes, as a matter of law, have no reasonable expectation of privacy in their communications during sexual encounters at a client's residence, and therefore the trial court erred in denying his motion to dismiss on those grounds. He further contends reversal is required due to instructional error, unlawful prosecution under the *Williamson* rule, and an unlawful probation search.

In the published portion of our opinion, we address and reject all but the final contention, which we reject in the unpublished portion of our opinion. We affirm the judgment.

FACTUAL AND PROCEDURAL BACKGROUND

*Factual Summary*

In view of the issues raised on appeal, we briefly summarize the pertinent facts underlying defendant's convictions. We reference additional details throughout the opinion when necessary.

Defendant is a repeat offender. In March 2011 he pleaded guilty to four counts of eavesdropping on or recording confidential communications. (§ 632, subd. (a).) These convictions were based on the secret videotaping of prostitutes at his residence. The trial

---

[1] Undesignated statutory references are to the Penal Code.

2

court imposed but suspended execution of a two-year sentence and placed him on probation for a term of five years.

In early October 2014 a search of numerous electronic devices seized from defendant's residence revealed that, in 2013 and 2014, defendant had engaged in sexual relations with prostitutes at his residence and had secretly videotaped these encounters. The women were not aware that they were being recorded and never gave defendant permission to do so. The women learned about the recordings for the first time after the search. The recordings were played at trial; some of them captured both words and real time images while others only captured real time images.

*Procedural Background*

In November 2015 the People filed an information charging defendant with 16 counts of eavesdropping on or recording confidential communications. (§ 632, subd. (a).) The People filed an amended information in January 2018, charging defendant with 12 counts of violating section 632 and four misdemeanor counts of disorderly conduct (§ 647, subd. (j)(3)(A)). The section 632 counts involved video recordings that captured both words and real time images while the disorderly conduct counts involved video recordings that only captured real time images.

A jury trial commenced in March 2018. Following the presentation of evidence, the prosecutor moved to dismiss one section 632 count based on insufficient evidence, which the court granted. In April 2018 the jury found defendant guilty on six section 632 counts and two counts of disorderly conduct (§ 647, subd. (j)(3)(A)). The jury acquitted defendant on one section 632 count and hung on the remaining counts (§§ 632, subd. (a) [four counts], 647, subd. (j)(3)(A) [two counts]), for which the court declared a mistrial and later dismissed. The trial court sentenced defendant to an aggregate term of six years four months in prison. This timely appeal followed.

3

## DISCUSSION

### I

#### *Motion to Dismiss*

Defendant first contends the trial court erred in denying his motion to dismiss the eavesdropping charges. He argues that reversal is required because prostitutes, as a matter of law, have no reasonable expectation of privacy in their communications during sexual encounters at a client's residence. We disagree.

#### A. *Additional Information*

In December 2016 defendant filed a motion to dismiss the section 632 charges. As relevant here, he argued that dismissal was warranted because a prostitute's communications during outcall prostitution activities at a client's residence do not qualify as protected "confidential communications" within the meaning of section 632. He claimed that prosecution was precluded under section 632 because "[o]utcall prostitution inherently entails circumstances 'in which the parties to the communications may reasonabl[y] expect that their communications may be overheard or recorded.' " In support of his position, defendant argued that a client's residence is a "workplace," and that prostitutes, as a matter of law, have no reasonable expectation of privacy in their communications at this workplace, since prostitutes should reasonably expect that they will be videotaped for various reasons, including security purposes (e.g., to discover theft or drug use).

After hearing arguments from counsel, the trial court denied defendant's motion in June 2017. The court expressly declined to find "that a prostitute is stripped of . . . their right to privacy merely because they are engaging in [prostitution-related] activity."[2] In

---

[2] In late June 2017 defendant filed a petition for writ of prohibition challenging, among other things, the trial court's denial of his motion to dismiss. The petition was denied in July 2017.

4

January 2018, after the matter was assigned to a different judge for trial, defendant filed a second motion to dismiss the section 632 charges based on the same claim. The second judge also rejected defendant's arguments.

B. *Applicable Legal Principles*

Article I, section 1 of the California Constitution explicitly deems privacy an inalienable right. It declares: "All people are by nature free and independent and have inalienable rights. Among these are enjoying and defending life and liberty, acquiring, possessing, and protecting property, and pursuing and obtaining safety, happiness, and *privacy*." (Cal. Const., art. I, § 1, italics added.)

"In 1967, the Legislature enacted section 632 as part of the California Invasion of Privacy Act (Privacy Act), to address concerns that 'advances in science and technology have led to the development of new devices and techniques for the purpose of eavesdropping upon private communications and that the invasion of privacy resulting from the continual and increasing use of such devices and techniques has created a serious threat to the free exercise of personal liberties and cannot be tolerated in a free and civilized society.' " (*Kight v. CashCall, Inc*. (2011) 200 Cal.App.4th 1377, 1388; § 630.) In enacting section 632, the Legislature expressed its intent to strongly protect an individual's privacy rights. The statute ensures that an individual has the right to control the nature and extent of the firsthand dissemination of a confidential communication. (§ 630; see *Kearney v. Salomon Smith Barney, Inc*. (2006) 39 Cal.4th 95, 124, 125 ["California must be viewed as having a strong and continuing interest in the full and vigorous application of the provisions of section 632 prohibiting the recording of . . . conversations without the knowledge or consent of *all* parties to the conversation"]; *Flanagan v. Flanagan* (2002) 27 Cal.4th 766, 774-775 [The "philosophy (of protecting an individual's privacy right) lie[s] at the heart of virtually all the decisions construing the Privacy Act"].)

Section 632, subdivision (a) imposes liability on "[every] person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication . . . ."  A "video recorder is an instrument which, if used in the manner proscribed under section 632, is a recording device for purposes of the privacy act." (*People v. Gibbons* (1989) 215 Cal.App.3d 1204, 1208 (*Gibbons*).)

Section 632, subdivision (c) defines "confidential communication" to include "any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties thereto, but excludes a communication made in a public gathering or in any legislative, judicial, executive, or administrative proceeding open to the public, or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded."  The term "confidential communication" has been interpreted to include communication by conduct in addition to oral or written dialogue.  (See *People v. Drennan* (2000) 84 Cal.App.4th 1349, 1353, 1356 ["confidential communication" under section 632 addresses the recording of sound-based or symbol-based communications, not still, timed photographs without accompanying sound]; *Gibbons, supra,* 215 Cal.App.3d at p. 1209 ["confidential communication" under section 632 encompasses communication by conduct, including sexual relations].)[3]

_____

[3]  We recognize the *Drennan* court disagreed with the conclusion in *Gibbons* that the term "confidential communication" under section 632 includes communication by conduct.  (See *People v. Drennan*, *supra*, 84 Cal.App.4th at pp. 1353-1354; *Gibbons, supra,* 215 Cal.App.3d at p. 1209.)  We need not decide whether we agree with *Drennan*, because, unlike in *Drennan*, the video recordings in this case that formed the basis of the section 632 charges captured *both* words and real time images.  (See *Drennan*, at p. 1352 [camera had no audio capabilities].)  Moreover, unlike in *Drennan*, the jury in this case was *not* instructed that "[c]ommunication . . . is not limited to conversations or oral communications, but rather encompasses any communication regardless of its form, including, but not limited to actions and signs where any party to the communication

6

A communication is confidential under section 632 if a party to that communication "has an objectively reasonable expectation that the [communication] is not being overheard or recorded." (*Flanagan v. Flanagan, supra,* 27 Cal.4th at p. 777, *id.* at p. 776.) "The test of confidentiality is objective. [A party's] subjective intent is irrelevant. [Citation.] 'A communication must be protected if *either* party reasonably expects the communication to be confined to the parties.' " (*Coulter v. Bank of America* (1994) 28 Cal.App.4th 923, 929.) Whether a party had an objectively reasonable expectation that a communication was not being overheard or recorded is generally a question of fact based on the circumstances presented. (*Hataishi v. First American Home Buyers Protection Corp.* (2014) 223 Cal.App.4th 1454, 1466.) However, if the undisputed material facts show no reasonable expectation of privacy, the question of whether a party's privacy has been invaded may be determined as a matter of law. (*Santa Ana Police Officers Assn. v. City of Santa Ana* (2017) 13 Cal.App.5th 317, 325.)

Where, as here, the material facts are undisputed, and the question is how to apply statutory language to a given factual context, the reviewing court applies a de novo standard of review. (*Connerly v. State Personnel Bd.* (2006) 37 Cal.4th 1169, 1175; *McMillin-BCED/Miramar Ranch North v. County of San Diego* (1995) 31 Cal.App.4th 545, 553.) An appellate court is free to draw its own conclusions of law from undisputed facts. (*Pueblos Del Rio South v. City of San Diego* (1989) 209 Cal.App.3d 893, 899.)

C. *Analysis*

We decline defendant's invitation to hold that prostitutes have no objectively reasonable expectation of privacy in their communications during sexual encounters at a client's residence, regardless of the particular circumstances of the interaction. The plain text of section 632, subdivision (a) does not support such a result and defendant has not

desires it to be confined thereto." (See *id.* at p. 1353.) The instructions given to the jury in this case did not state or imply that sexual relations or other conduct are a form of communication within the meaning of section 632.

7

cited any authority convincing us that we should adopt his position, which, in our view, contravenes the Privacy Act's goal to strongly protect individual privacy rights. A person's participation in sexual activities at a private residence in exchange for money, without more, does not necessarily cause them to expect that their words and actions will be recorded without their consent. In other words, prostitution activities in this context do not, as a matter of law, render objectively unreasonable a person's expectation that they will not be secretly recorded in a video that can be disseminated to others. As a general matter, there is nothing about prostitution activities at a private residence that strips a prostitute of their right to control the firsthand dissemination of their words and images.

We find unavailing defendant's reliance on *People v. Nazary* (2010) 191 Cal.App.4th 727[4] and *Hernandez v. Hillsides Inc.* (2009) 47 Cal.4th 272 (*Hernandez*). In *Nazary* the appellate court considered the privacy expectations of a gas station manager with regard to a videotape obtained by hidden cameras in the manager's office. (*Nazary*, at pp. 732, 744.) The *Nazary* court held that the manager had no reasonable expectation of privacy in a videotaped confrontation between himself and the owners of the gas station, and therefore the communications during that confrontation were not "confidential communications" within the meaning of section 632. (*Nazary,* at p. 747.) In so holding, the court explained that the circumstances of the videotaped communications were such that the defendant could reasonably expect that they might be overheard or recorded. (*Ibid*.) The court noted that the defendant was aware of the owners' continuing interest in ensuring the safety and security of their property, which had led to the installation of video surveillance equipment for other areas of the station,

---

[4] *Nazary* was disapproved, in part, in *People v. Vidana* (2016) 1 Cal.5th 632, 648, fn. 16. We need not discuss the basis for the disapproval because it is not relevant to any issue raised in this appeal.

including the interior of the minimart, the outside of the premises, and the gas pump islands and outside pay machines. (*Id*. at pp. 732, 747.) The court further noted that defendant was aware that he was under suspicion of improper conduct, and that cameras had been installed in the manager's office. (*Id*. at p. 747.)

In *Hernandez* our Supreme Court considered privacy expectations where employees sued their private employer for installing secret video surveillance cameras in their offices to monitor unauthorized computer use. The court held that the employer violated its employees' reasonable expectation of privacy when it placed a hidden video camera inside their semi-private office. (*Hernandez, supra*, 47 Cal.4th at pp. 277, 289-290, 294.) In so holding, the *Hernandez* court explained that "employees who retreat into a shared or solo office, and who perform work or personal activities in relative seclusion there, would not reasonably expect to be the subject of . . . secret filming by their employer." (*Id*. at p. 291.) In addressing the range of potential intrusions on privacy, the court explained that at one end of the spectrum are "settings in which work or business is conducted in an open and accessible space, within the sight and hearing not only of coworkers and supervisors, but also of customers, visitors, and the general public." (*Id*. at p. 290 [e.g., secret videotaping of lunch meeting on crowded outdoor patio of public restaurant, employee in common, open, and exposed area of workplace].) At the other end of the spectrum are places where employees maintain privacy interests, such as "areas in the workplace subject to restricted access and limited view, and reserved exclusively for performing bodily functions or other inherently personal acts." (*Ibid*. [e.g., secret videotaping of locker room in basement of police station, restroom at workplace, designated area for models and dancers to change clothes at workplace].) The *Hernandez* court was particularly concerned with the "intrusive effect" of "hidden cameras and video recorders in settings that otherwise seem private." (*Id*. at p. 291.) The court concluded that such recording "denies the actor a key feature of privacy—the right to control the dissemination of his image and actions," and noted that it has "made clear

9

that the ' "mere fact that a person can be seen by someone does not automatically mean that he or she can legally be forced to be subject to being seen by everyone." ' " (*Ibid*.)

There is nothing in *Nazary* or *Hernandez* that persuades us that prostitutes, as a matter of law, have no reasonable expectation of privacy in their communications during sexual encounters at a client's residence. Both *Nazary* and *Hernandez* are readily distinguishable from the circumstances presented here. Indeed, *Hernandez* undermines rather than supports defendant's position. Neither case involved the videotaping of sexual relations at a private residence. Generally speaking, a person's residence is a private setting and intimate acts that occur in that setting are inherently personal acts, which supports a reasonable expectation of privacy in those acts. This expectation of privacy is not relinquished or forfeited simply because a prostitute is involved.

Finally, we find no merit in defendant's attempt to analogize the circumstances of *Nazary* to the facts of this case. Here, the videotaping involved the secret recording of communications made in connection with sexual relations, and the women were not aware that they were being recorded.

We have reviewed the abundant federal and out-of-state authority cited by defendant. Nothing in those cases persuades us that a different result is required. The cases relied on by defendant are factually distinguishable and inapposite. As one example, defendant claims that his position is supported by a "factually similar" case issued by the Supreme Judicial Court of Maine, *State v. Strong* (2013) 60 A.3d 1286. But that case involved privacy expectations of individuals who entered and disrobed in various places (a residence, studio, and business office) where a prostitute was known to conduct her business. (*Id*. at pp. 1287-1288, 1291.) The *Strong* court concluded that these individuals did not, as matter of law, have an objectively reasonable expectation that they would not be recorded by video surveillance. The court stated: "Places of prostitution and people who knowingly frequent them to engage a prostitute are not sanctioned by society. Accordingly, it is objectively unreasonable for a person who

10

knowingly enters a place of prostitution for the purpose of engaging a prostitute to expect that society recognizes a right to be safe from surveillance while inside." (*Id*. at p. 1291.) *Strong* is clearly distinguishable from the facts of this case. Further, unlike the California Constitution, the Constitution of Maine does not expressly include the right to privacy as an inalienable right, although it includes each of the other rights listed by California in the two states' respective opening sections. (Me. Const., Art. 1, § 1.)

Likewise, defendant's reliance on *Minnesota v. Carter* (1998) 525 U.S. 83 is misplaced. That case involved the question of whether people, who were present at another's apartment for the sole purpose of packaging cocaine, had an expectation of privacy in the apartment that the Fourth Amendment protects. (*Id*. at pp. 85-86, 89-91.) In *Carter,* a police officer investigating a tip from a confidential informant looked into the window of a ground-floor apartment through a gap in the blinds and observed people putting white powder into bags. (*Id*. at p. 85.) The defendants, who did not live in the apartment but had come to engage in a narcotics transaction, moved to suppress the evidence derived from the officer's observations. (*Id*. at p. 86.) The United States Supreme Court held that the defendants had no reasonable expectation of privacy in the apartment because (1) they were in the apartment only for a short period of time, (2) they were there solely to conduct a commercial transaction (to divide a quantity of cocaine into bags), and (3) they had no previous connection or relationship with the lessee. (*Id*. at pp. 90-91.) Contrary to defendant's contention, the prostitutes in this case are not "situated identically" to the defendants in *Carter* with respect to their "lack of any reasonable expectation of privacy." Unlike *Carter,* this case does not involve privacy expectations of a homeowner's guest under the Fourth Amendment in the context of a narcotics transaction. Rather, this case involves the privacy expectations of prostitutes under California law in the context of consensual sexual encounters at a client's residence. We are confronted with the question of whether prostitutes, as a matter of law,

11

have an objectively reasonable expectation of privacy in their communications during these encounters.  On this question, *Carter* is factually and legally inapposite.

## II

### *Alleged Instructional Error*

Defendant contends the trial court erred in failing to instruct the jury on an element of the section 632 offenses.  He adds the court erred in refusing to instruct the jury with his proposed pinpoint instruction regarding factors the jury should consider in deciding whether a reasonable expectation of privacy existed.  As we shall explain, we find no instructional error.[5]

A.  *Additional Background*

Prior to trial, the trial court advised the parties that there were no pattern jury instructions for the charged offenses and provided them with draft jury instructions on the elements of the offenses.  The court directed the parties to review the draft instructions and invited them to submit proposed instructions related to the elements of the offenses.  In response, defendant submitted a number of proposed instructions, including a pinpoint instruction pertaining to the section 632 offenses, which stated:

"As it relates to the issue of expectation of privacy[,]

"The jury must conclude whether or not there is a privacy right[.]

"The fact one is an employee and/or employer does not automatically mean that there is an expectation of privacy.

"Just because the circumstances involve sex doesn't mean there automatically is a reasonable expectation of privacy[.]

---

[5]  We suggest the Judicial Council Advisory Committee on Criminal Jury Instructions consider formulating a pattern instruction for this offense.  (Cf. CACI No. 1809, Recording of Confidential Information, §§ 632, 637.2.)

"You may consider this [*sic*] circumstances of the sexual activity in determining whether or not there is an expectation of privacy. For example, you may consider whether or not the sexual activity is between a husband and wife, boyfriend and girlfriend and/or intimate partners or is the product of a commercial transaction.

"These are all factors you may take into consideration when deciding whether or not the parties had a reasonable expectation of privacy.

"What weight, if any, to give those circumstances or facts is for the jury to decide." (Capitalization omitted.)

At the hearing on jury instructions following the presentation of evidence, the trial court stated that it would not instruct the jury with defendant's proposed pinpoint instruction because it was argumentative and duplicative of other instructions.

Thereafter, the jury was instructed on the section 632 offenses as follows:

"The defendant is charged in counts one, four through nine, eleven, twelve, thirteen, fifteen and sixteen with eavesdropping in violation of Penal Code § 632(a).

"To prove that the defendant is guilty of this crime, the People must prove that:

"1.    The defendant intentionally and without consent of all parties to a communication;

"2.    Used an electronic amplifying or recording device;

"3.    To eavesdrop upon or record the confidential communication.

"*Confidential communication* means any communication carried on in circumstances as may reasonably indicate that any party to the communication desires it to be confined to the parties to the communication, but excludes a communication made in a public gathering or in any other circumstance in which the parties to the communication may reasonably expect that the communication may be overheard or recorded.

13

"The jury must determine whether or not the circumstances of the recording reasonably indicate that a party to the communication desired it to be confined to the parties to the communication."

In a separate instruction, the jury was further instructed on the section 632 offenses:

"As to Counts 1, 4, 5, 6, 7, 8, 9, 11, 12, 13, 15, and 16, which allege violations of Penal Code section 632(a), if the evidence raises a reasonable doubt as to whether or not the recording occurred under circumstances to reasonably create an expectation that any party to the communication desires it to be confined to the parties to that communication, you must find the defendant not guilty.

[¶] . . . [¶]

"With regard to Counts 1, 4, 5, 6, 7, 8, 9, 11, 12, 13, 15, and 16, the contents of a communication need not be of a certain type or subject matter to be considered confidential. The communication can be about anything so long as it occurs under circumstances that reasonably indicate that any party to the communication desires it to be confined to the parties involved in the communication, and can reasonably expect that it is not being overheard or recorded."[6]

---

[6] This instruction also included the following language pertaining to the section 647 offenses:

"As to counts 2, 3 and 10, which allege violations of Penal Code section 647(j)(3)(A), if the evidence raises a reasonable doubt as to whether or not the complaining witness had a reasonable expectation of privacy, you must find the defendant not guilty.

[¶] . . . [¶]

"With regard to counts 2, 3 and 10, a person does not forfeit their reasonable expectation of privacy based solely on the fact that they engaged in an act of prostitution, nor do they automatically have an expectation of privacy when they engage in an act of prostitution."

B. *Applicable Legal Principles*

"The trial court has a sua sponte duty to instruct the jury on the essential elements of the charged offense" (*People v. Merritt* (2017) 2 Cal.5th 819, 824) and all " 'general principles of law that are closely and openly connected with the facts before the court and necessary for the jury's understanding of the case' " (*People v. Simon* (2016) 1 Cal.5th 98, 143).

" 'Under appropriate circumstances, "a trial court may be required to give a requested jury instruction that pinpoints a defense theory of the case . . . ." ' " (*People v. Whisenhunt* (2008) 44 Cal.4th 174, 220.)  Pinpoint instructions " 'relate particular facts to a legal issue in the case or "pinpoint" the crux of a defendant's case.' " (*People v. Gutierrez* (2009) 45 Cal.4th 789, 824.)  Parties are entitled to legally correct and factually warranted pinpoint instructions, should they request such additional instruction.  (*People v. Hughes* (2002) 27 Cal.4th 287, 362.)  However, a trial court may properly refuse to give a pinpoint instruction that "incorrectly states the law, is argumentative, duplicative, or potentially confusing [citation], or if it is not supported by substantial evidence." (*People v. Moon* (2005) 37 Cal.4th 1, 30.)

We review claims of instructional error de novo.  (*People v. Manriquez* (2005) 37 Cal.4th 547, 581.)  "Review of the adequacy of instructions is based on whether the trial court 'fully and fairly instructed on the applicable law.'  [Citation.]  ' "In determining whether error has been committed in giving or not giving jury instructions, we must consider the instructions as a whole . . . [and] assume that the jurors are intelligent persons and capable of understanding and correlating all jury instructions which are given." [Citation.]' " (*People v. Ramos* (2008) 163 Cal.App.4th 1082, 1088.)

C. *Analysis*

Defendant argues the trial court committed instructional error because it failed to inform the jury that "the prosecution must prove and the jury must determine whether the communication was subject to a reasonable expectation of privacy based on the

15

circumstances of the interaction." He asserts that "to accurately convey the elements that the jury had to find to support a guilty verdict [on the § 632 offenses], the instruction needed to inform the jury . . . that the participant [in the communication] not only desired that the communication be kept confidential, but also . . . that the participant's subjective desire for confidentiality was accompanied [by] an objectively reasonable expectation of privacy based on all the circumstances of the activity and prevailing social norms." (Emphasis omitted.) According to defendant, reversal is required because the jury was never given an instruction that the prosecution had to prove and the jury had to find beyond a reasonable doubt that the complaining witnesses had a reasonable expectation their conversations were not being recorded. We see no error.

" '[T]he language of a statute defining a crime . . . is generally an appropriate and desirable basis for an instruction, and is ordinarily sufficient when the defendant fails to request amplification.' " (*People v. Estrada* (1995) 11 Cal.4th 568, 574; *People v. Failla* (1966) 64 Cal.2d 560, 565.) "[I]f the instruction as given is adequate, the trial court is under no obligation to amplify or explain in the absence of a request that it do so." (*People v. Mayfield* (1997) 14 Cal.4th 668, 778, overruled on another ground in *People v. Scott* (2015) 61 Cal.4th 363, 390, fn. 2.) "Even if such an instruction 'cannot be commended as a full or clear exposition of the meaning of the section of the Code, still it cannot be said that it was error for the court in giving the law to conformed to the language of the Code, and to have omitted what that Code itself omits.' " (*People v. Reed* (1952) 38 Cal.2d 423, 430.) Here, the trial court's instruction on the elements of the section 632 offense correctly stated the law. The instruction tracked the language of the statutory text defining the crime and included the definition of "confidential communication," which adequately conveyed the elements of the offense. The jury was also properly instructed on the People's burden of proof, and was told that it "must determine whether or not the circumstances of the recording reasonably indicate that a party to the communication desired it to be confined to the parties to the

16

communication." Defendant, for his part, did not request amplification of the instruction on the elements of the section 632 offense in the manner he now complains of on appeal[7] and the trial court was under no obligation to further amplify or explain the elements of the offense. " ' "Where an instruction on a particular point or points as given by the court is correct as far as it goes, and the only valid objection, if any, to it is that it is deficient or inadequate by reason of its generality, indefiniteness, or incompleteness, if defendant desires additional, amplified, explanatory, fuller, or more complete, elaborate, comprehensive, definite, specific or explicit instructions on such point or points, he must properly request the same, otherwise error cannot be predicated upon the failure to give such additional instruction." ' [Citation.] 'The defendant will not be heard to complain where he has failed to request an amplification of an instruction [given in the language of the statute].' " (*People v. Turner* (2019) 37 Cal.App.5th 882, 888.) This is the case here.

We also reject defendant's contention that the trial court erred in failing to instruct the jury with his proposed pinpoint instruction regarding certain factors the jury could consider in deciding whether the prostitutes in this case had a reasonable expectation of privacy in their communications. The jury was adequately instructed on how it should decide whether a communication was confidential for purposes of section 632, subdivision (a). The language of defendant's proposed instruction that was not duplicative of other instructions was argumentative, as it invited the jury to focus on

---

[7] In his reply brief, defendant points out that one of his proposed pinpoint instructions expressly stated that " 'one of the issues the prosecution must prove beyond a reasonable doubt is whether or not the communications occurred in circumstances such as to create a reasonable belief that they will be confidential.' " This proposed instruction, however, related to the section 647 offenses, not the section 632 offenses. Defendant has not directed us to any portion of the record showing that he asked the trial court to instruct the jury with this language as part of the elements of the section 632 offense. In any event, the court properly refused to instruct the jury with this language because it is duplicative of other instructions given to the jury. (*People v. Mora and Rangel* (2018) 5 Cal.5th 442, 499 [pinpoint may be refused if the proposed instruction is duplicative].)

17

specific aspects of the circumstances surrounding the communications at issue. For example, the argumentative portions of the proposed instruction invited the jury to consider other types of relationships, such as "husband and wife, boyfriend and girlfriend and/or intimate partners," and compare them to this case. (*People v. Ledesma* (2006) 39 Cal.4th 641, 720 [an instruction is argumentative if it directs the jury to consider specific evidence].) Finally, we note that defendant's proposed instruction was inaccurate to the extent it suggested that any alleged employer-employee relationship between defendant and the prostitutes was relevant to whether the communications at issue were confidential within the meaning of section 632.

III

*Unlawful Prosecution* - Williamson *Rule*

Defendant contends reversal is required because he was unlawfully prosecuted under section 632, subdivision (a). He argues that he should have been prosecuted under a more specific or "special" statute, section 647, subdivision (j)(3)(A). His claim is premised on the *Williamson* rule, based on our Supreme Court's decision in *In re Williamson* (1954) 43 Cal.2d 651, 654.[8] We reject defendant's claim.

A. *The* Williamson *Rule*

"Under the *Williamson* rule, if a general statute includes the same conduct as a special statute, the court infers that the Legislature intended that conduct to be prosecuted exclusively under the special statute. In effect, the special statute is interpreted as creating an exception to the general statute for conduct that otherwise could be

---

[8] We note that defendant raised the *Williamson* issue in the trial court. After hearing arguments from counsel, the trial court concluded, as relevant here, that the *Williamson* rule did not preclude the prosecution from prosecuting defendant under section 632, subdivision (a) with regard to the video recordings that included both words and real time images. In late June 2017 defendant filed a petition for writ of prohibition challenging, among other things, the trial court's ruling on the *Williamson* issue. The petition was denied in July 2017.

prosecuted under either statute." (*People v. Murphy* (2011) 52 Cal.4th 81, 86; *In re Williamson, supra*, 43 Cal.2d at p. 654.)

"[T]he *Williamson* rule applies when (1) 'each element of the general statute corresponds to an element on the face of the special statute' or (2) when 'it appears from the statutory context that a violation of the special statute will necessarily or commonly result in a violation of the general statute.' [Citation.] In its clearest application, the rule is triggered when a violation of a provision of the special statute would inevitably constitute a violation of the general statute." (*People v. Murphy, supra*, 52 Cal.4th at p. 86.) If the *Williamson* rule applies, "the prosecution lacks power to prosecute under the general statute where the alleged facts parallel the acts proscribed by the more specific statute." (*People v. Cockburn* (2003) 109 Cal.App.4th 1151, 1158.)

"[W]hen the Legislature has enacted a specific statute addressing a specific matter, and has prescribed a sanction therefor, the People may not prosecute under a general statute that covers the same conduct, *but which prescribes a more severe penalty*, unless a legislative intent to permit such alternative prosecution clearly appears." (*Mitchell v. Superior Court* (1989) 49 Cal.3d 1230, 1250; see also *People v. Cockburn, supra*, 109 Cal.App.4th at p. 1159.)

B. *Analysis*

Section 632 was enacted in 1967 as part of the Privacy Act. (*Kight v. CashCall, Inc., supra*, 200 Cal.App.4th at p. 1388.) The statute imposes liability on "[every] person who, intentionally and without the consent of all parties to a confidential communication, uses an electronic amplifying or recording device to eavesdrop upon or record the confidential communication . . . ." A violation of this provision is a "wobbler," as it is punishable either by a term in state prison or imprisonment in county jail or by both fine and imprisonment. (§ 632, subd. (a); *People v. Park* (2013) 56 Cal.4th 782, 789.)

19

The disorderly conduct offense that currently appears in subdivision (j)(3)(A) of section 647 was added to the Penal Code in 2004.[9] (Stats. 2004, ch. 666, § 1.) This subdivision is one of several provisions of section 647 that are sometimes referred to as California's "Peeping Tom" statute. (See *People v. Johnson* (2015) 234 Cal.App.4th 1432, 1442; *People v. Hobbs* (2007) 152 Cal.App.4th 1, 8 & fn. 12; David D. Kremenetsky, Insatiable *"Up-Skirt" Voyeurs Force California Lawmakers to Expand Privacy Protection in Public Places* (2000) 31 McGeorge L.Rev. 285, 289.) Section 647, subdivision (j)(3)(A) states, in pertinent part, that a person who commits the following act is guilty of disorderly conduct: "A person who uses a concealed camcorder, motion picture camera, or photographic camera of any type, to secretly videotape, film, photograph, or record by electronic means, another identifiable person who may be in a state of full or partial undress, for the purpose of viewing the body of, or the undergarments worn by, that other person, without the consent or knowledge of that other person, in the interior of a bedroom, bathroom, changing room, fitting room, dressing room, or tanning booth, or the interior of any other area in which that other person has a reasonable expectation of privacy, with the intent to invade the privacy of that other person." With exceptions not applicable here, a violation of section 647 is a misdemeanor. (§ 647, subds. (b)(5), (k).)

Defendant does not contend that reversal is required under the first test of the *Williamson* rule. Instead, he relies on the second test, arguing that a violation of section 647, subdivision (j)(3)(A) will "commonly" result in a violation of section 632, subdivision (a) "because of the increasing prevalent use of video recording devices that also capture attendant audio, particularly cell phones and tablet/IPAD devices." We are not persuaded. The text of section 647, subdivision (j)(3)(A) proscribes the use of a

[9] Prior to January 1, 2008, subdivision (j)(3)(A) of section 647 was codified as subdivision (k)(3)(A). (Stats. 2007, ch. 302, § 11.)

20

camera or other similar device to secretly record a person in a state of full or partial undress in certain specified locations and other areas where a person has a reasonable expectation of privacy. This provision is intended to protect the visual privacy of persons in various states of undress. (*Hernandez, supra*, 47 Cal.4th at p. 292.) By contrast, the text of section 632, subdivision (a) proscribes the use of an electronic amplifying or recording device to eavesdrop upon or record a confidential communication without the consent of all parties. Defendant's argument for application of the *Williamson* rule fails because it assumes a hidden camera used to secretly videotape a person in a state of full or partial undress will "commonly" capture audio in addition to real time images. But the fact that modern recording devices are *capable* of capturing sound does not lead to the conclusion that those devices will "commonly" capture sound such that the *Williamson* rule applies. In any event, even if we assume the second test of the *Williamson* rule was satisfied, the Legislature has clearly expressed its intent to permit alternative prosecution under a statute that prescribes a more serious penalty. Section 647, subdivision (j)(5) states: "This subdivision does not preclude punishment under any section of law providing for greater punishment."

IV

*Probation Search*

Defendant contends his Fourth Amendment rights were violated when the electronic devices seized during the probation search of his residence were searched. He argues that no reasonable law enforcement officer could have believed his probation search condition justified the warrantless search of his electronic devices, since the condition makes no mention of electronic devices. We disagree.

A. *Additional Information*

In March 2011 defendant was placed on probation for a term of five years with various terms and conditions, including that he "submit his person, property and automobile and any object under [his] control to search and seizure . . . by any law

21

enforcement officer and/or Probation officer, at any time of the day or night, with or without his consent, with or without a warrant." In early October 2014, probation officers conducted a probation search of his residence after receiving an anonymous tip that he was regularly in contact with prostitutes and his bedroom "contains a lot of illegal activity," most of which is captured on hidden cameras. During that search, the officers seized numerous electronic devices, including a camcorder, computers, external hard drives, flash drives, cameras, cell phones, and memory cards.

In December 2016 defendant filed a motion to suppress the evidence obtained from his electronic devices. The People opposed the motion, arguing that the search was lawful because it was based on a valid probation condition, was not arbitrary or capricious, and was based on legitimate law enforcement purposes and the rehabilitative and reformative purpose of defendant's probation. In reply, defendant argued, among other things, that the warrantless search was unlawful under *Riley v. California* (2014) 573 U.S. 373, which held that the search incident to arrest exception to the warrant requirement does not apply to searches of a cell phone seized from an arrestee (*id*. at p. 403). In making this argument, defendant noted that his search condition does not expressly allow searches of electronic devices. Defendant additionally argued that the probation search was unlawful under the California Electronic Communications Privacy Act (§ 1546 et. seq.) (ECPA), which went into effect after the search on January 1, 2016. (Stats. 2015, ch. 651, § 1.) Shortly before the hearing on the motion, defendant filed a supplemental points and authorities in support of his motion.

In June 2017 the trial court heard argument and denied defendant's motion to suppress. Several weeks later, defendant filed a motion for reconsideration, asking the trial court to reconsider its ruling in light of *In re I.V.* (2017) 11 Cal.App.5th 249. The

trial court denied the motion, finding that it was procedurally improper and, in any event, failed on the merits.[10]

B. *Applicable Legal Principles*

" 'The Fourth Amendment to the federal Constitution prohibits *unreasonable* searches and seizures.' " (*People v. Macabeo* (2016) 1 Cal.5th 1206, 1212.) " 'In the absence of a warrant, a search is reasonable only if it falls within a specific exception to the warrant requirement.' [Citation.] The burden is on the People to establish an exception applies." (*Id.* at p. 1213.)

A probation search is one such exception, because a probationer consents to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid service of a state prison term, as long as the search is not undertaken for harassment or for arbitrary or capricious reasons. (*People v. Bravo* (1987) 43 Cal.3d 600, 608-610 (*Bravo*).)

"Generally speaking, conditions of probation 'are meant to assure that the probation serves as a period of genuine rehabilitation and that the community is not harmed by the probationer's being at large. [Citation.] These same goals require and justify the exercise of supervision to assure that the restrictions are in fact observed.' [Citation.] For example, probation conditions authorizing searches 'aid in deterring further offenses . . . and in monitoring compliance with the terms of probation. [Citations.] By allowing close supervision of probationers, probation search conditions serve to promote rehabilitation and reduce recidivism while helping to protect the community from potential harm by probationers.' " (*People v. Olguin* (2008) 45 Cal.4th 375, 380.)

---

[10] In July 2017 defendant filed a petition for writ of mandate challenging the denial of his motion to suppress. The petition was denied in August 2017.

When considering a trial court's ruling on a motion to suppress, we defer to the trial court's factual findings, express and implied, that are supported by substantial evidence. We independently apply the law based on those facts. (*People v. Suff* (2014) 58 Cal.4th 1013, 1053.) We evaluate the scope of the defendant's Fourth Amendment waiver using an objective test. The search condition is interpreted on the basis of what a reasonable, objective person would understand from the language of the condition itself. (*Bravo, supra*, 43 Cal.3d at pp. 606-607.) "A search conducted pursuant to a valid consent does not violate the Fourth Amendment unless the search exceeds the scope of the consent." (*Id.* at p. 605.)

C. *Analysis*

We conclude the trial court properly denied defendant's motion to suppress. At the time of the challenged search, a reasonable, objective, person would have understood that a search of defendant's electronic devices fell within the scope of his general search condition given the nature of defendant's prior convictions. Defendant was placed on probation in 2011 after pleading guilty to eavesdropping on or recording confidential communications based on the secret videotaping of prostitutes at his residence. As a condition of his probation, he agreed to a general search term, which subjected him to warrantless searches of his "person, property and automobile." The electronic devices that were searched in this case were seized from defendant's residence in October 2014 after the probation department received an anonymous tip suggesting that he was, again, secretly videotaping prostitutes at his residence. On this record, the probation condition under which defendant agreed to "submit" his "property" to "search and seizure" by probation officers "with or without his consent, with or without a warrant" included the electronic devices seized from his residence.

Our conclusion is supported by *People v. Sandee* (2017) 15 Cal.App.5th 294 (*Sandee*). In that case, a prosecution for a drug offense committed while on probation, a law enforcement officer stopped the defendant after she left a house under surveillance

24

for drug activity. After confirming with dispatch that she was on searchable probation, the officer searched her cell phone and found text messages possibly related to narcotics sales. (*Id.* at p. 298.) The appellate court upheld the trial court's denial of the defendant's motion to suppress the text messages, rejecting her argument that the general probation search condition allowing authorities to search her "property" and "personal effects" did not extend to cell phone data. (*Ibid.*) In doing so, the court applied the objective test of *Bravo, supra*, 43 Cal.3d at pages 606-607 and found that at the time the search was conducted, a "reasonable, objective person" would have understood that a search of the phone fell within the scope of the general search condition in the defendant's probation orders. (*Sandee*, at pp. 301-302.) The court reasoned that the defendant had agreed to submit her "property" and "personal effects" to search at any time, the probation search condition was broadly worded and contained no limiting language to exclude a cell phone or other electronic devices, and a "reasonable person would understand the terms 'property' and 'personal effects' to include [the defendant's] cell phone and the data on it." (*Id.* at p. 302.)

The timing of the search was essential to the result in *Sandee*. (*Sandee, supra*, 15 Cal.App.5th at p. 301.) The *Sandee* court rejected the contention that the cell phone evidence should have been suppressed under the ECPA, which went into effect after the search but prior to the suppression hearing, and prevents a government entity from accessing " 'electronic device information by means of physical interaction or electronic communication with the electronic device' " absent certain enumerated statutory exceptions, including the specific consent of the owner of the device or " 'if the device is seized from an authorized possessor of the device who is subject to an electronic device search as a clear and unambiguous condition of probation, mandatory supervision, or pretrial release.' " (*Id.* at pp. 304-306.) The court reasoned that, "[a]s the ECPA was not in effect at the time of the search, a reasonable, objective person at the time of the search would not have understood the ECPA to restrict the scope of the search permitted by the

probation orders." (*Id.* at p. 305.)  Therefore, the court concluded that, although it may have been reasonable "*after* the ECPA became effective[] for a law enforcement officer conducting a search to interpret a general probation search condition authorizing a warrantless search of the probationer's property as excluding searches of the probationer's electronic device information, such as cell phone data, we see no basis for a reasonable person to have reached that conclusion *prior* to the ECPA."  (*Ibid.*)

The *Sandee* court rejected the defendant's reliance on *United States v. Lara* (9th Cir. 2016) 815 F.3d 605, which held that a probation condition authorizing search of " ' "person and property, including any residence, premises, container or vehicle under [his] control" ' " did not include cell phone data (*id*. at p. 610).  (*Sandee, supra*, 15 Cal.App.5th at pp. 302-303.)  The court explained that *Lara* was not persuasive because the Ninth Circuit "did not follow the approach normally employed by the California Supreme Court in assessing the validity of a search conducted pursuant to a probation search condition, under which the probationer is understood to have consented to all searches within the scope of the probation search condition, as interpreted on an objective basis" (*Sandee,* at p. 302) as long as they are not "undertaken in a harassing or unreasonable manner" (*id.* at p. 303, fn. 6).  The *Sandee* court acknowledged *Riley* but concluded there was nothing in that case to suggest that cell phones "should *not* be understood as a *type* of personal property" within the scope of a probation search.  (*Id.* at p. 302, fn. 5.)[11]

Finally, the *Sandee* court declined to follow *I.V.*, which held that a general probation condition authorizing searches of "property," reasonably construed, applied

---

[11] *Riley* does not control in cases involving probation searches.  *Riley* dealt with the validity of a warrantless search incident to arrest (*Riley v. California, supra*, 573 U.S. at p. 378), not a probation search where the probationer has consented to the waiver of his Fourth Amendment rights in exchange for the opportunity to avoid serving a state prison term (*Bravo, supra*, 43 Cal.3d at p. 608).

only to tangible property, not electronic data.  The court found *I.V.* distinguishable because the search condition in that case was imposed after the ECPA took effect. (*Sandee, supra*, 15 Cal.App.5th at p. 306; see *In re I.V., supra*, 11 Cal.App.5th at p. 262 [search condition authorized warrantless searches of I.V.'s " 'person, property, [and] vehicle' "].)

The *Sandee* decision supports our conclusion that at the time of the challenged search, a reasonable, objective person would have understood that a search of defendant's electronic devices fell within the scope of his general search condition.  Accordingly, we find no error in the trial court's denial of defendant's motion to suppress.

## DISPOSITION

The judgment is affirmed.

/s/
Duarte, J.

We concur:

/s/
Mauro, Acting P. J.

/s/
Murray, J.

27